Frank Collentine, Jr., an Infant, by Frank Collentine, Sr., His Guardian ad Litem, et al., Appellants, *v.* City of New York, Respondent.

Argued October 18, 1938; decided November 29, 1938.

*Frank L. Tyson* and *I. Sidney Worthman* for appellants. The testimony presented questions of fact which should have been submitted to the jury. (*Augustine* v. *Town of Brant,* 249 N. Y. 198; *Van Dyke* v. *City of Utica,* 203 App. Div. 26; *Tantillo* v. *Goldstein Bros. Amusement Co.,* 248 N. Y. 286; *Cowley* v. *Rochester Fire Works Co.,* 183 N. Y. 353; *Boylhart* v. *Di Marco & Reimann,* 270 N. Y. 217; *Long* v. *City of Dunkirk,* 260 N. Y. 599; *Kunz* v. *City of Troy,* 104 N. Y. 344; *Parnell* v. *Holland Furnace Co.,* 234 App. Div. 567; 260 N. Y. 604; *Robert* v. *U. S. Shipping Board Emergency Fleet Corp.,* 240 N. Y. 474; *Condran* v. *Park & Tilford,* 213 N. Y. 341; *DeHaen* v. *Rockwood Sprinkler Co.,* 258 N. Y. 350; *Jewhurst* v. *City of Syracuse,* 108 N. Y. 303; *Connell* v. *Berland,* 223 App. Div. 234; 248 N. Y. 641; *Jaked* v. *Board of Education,* 198 App. Div. 113; 234 N. Y. 591; *Hynes* v. *N. Y. C. R. R. Co.,* 231 N. Y. 229; *Lessin* v. *Board of Education,* 247 N. Y. 503.) The direction of a verdict for the defendant was improper. (*Wynn* v. *Provident Life & Trust Co.,* 206 N. Y. 701; *Hagan* v. *Sone,* 174 N. Y. 317; *McDonald* v. *Metropolitan St. Ry. Co.,* 167 N. Y. 66; *Askelsen* v. *Delaware, L. & W. R. R. Co.,* 224 App. Div. 750; *Greeff Engineering & Mfg. Co.* v. *Scourene Mfg. Co.,* 182 App. Div. 311; *Sokoloff* v. *Wapnick,* 149 Misc. Rep. 535.)

*William C. Chanler, Corporation Counsel (Arthur H. Goldberg* and *Paxton Blair* of counsel), for respondent. Plaintiff was a trespasser or bare licensee. An owner of property is under no duty to make trespassing impossible by erecting impassable barriers. (*Johnson* v. *City of New York*, 208 N. Y. 77; *Vaughan* v. *Transit Development Co.*, 222 N. Y. 79; *Mendelowitz* v. *Neisner*, 258 N. Y. 181; *Walker* v. *Bachman*, 268 N. Y. 294; *Murphy* v. *City of Brooklyn*, 118 N. Y. 575; *Kafline* v. *Brooklyn Eastern District Terminal Co.*, 180 App. Div. 858; 228 N. Y. 521; *Olsen* v. *Fennia Realty Co.*, 246 N. Y. 641; *O'Callahan* v. *Commonwealth Engineering Corp.*, 247 N. Y. 127; *Breeze* v. *City of New York*, 249 App. Div. 856; 275 N. Y. 528.) Even if plaintiff was an invitee, no breach of duty by the defendant was established. The condition of the platform was obvious. There was no negligent failure to warn or guard against such a condition. (*Garthe* v. *Ruppert*, 264 N. Y. 290; *Johnson* v. *City of New York*, 208 N. Y. 77; *Powers* v. *Montgomery, Ward & Co.*, 251 App. Div. 120; 276 N. Y. 600; *Fishman* v. *Brooklyn Jewish Center, Inc.*, 234 App. Div. 319; *Lindsley* v. *Stern*, 203 App. Div. 615; *De Negro* v. *Christman*, 77 Misc. Rep. 147; *Metcalfe* v. *Cunard S. S. Co.*, 147 Mass. 66; *Cusick* v. *Adams*, 115 N. Y. 55; *Losie* v. *Frisk*, 243 App. Div. 825; *Cote* v. *Boston & Maine Railroad*, 278 N. Y. 78; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240.)

RIPPEY, J. This is an action to recover damages from the city of New York for injuries received by the plaintiff Frank Collentine, Jr., a boy ten years of age, allegedly due to the negligence of defendant, when he fell from the roof of a building located in DeWitt Clinton Park. The accident happened at about 7:30 P. M., June 20, 1932. His father also sued for the loss of services, companionship and prospective earnings of the boy and for moneys expended and to be expended for medical care, nursing and hospitalization. At the close of the case the trial

judge directed a verdict for the defendant on the ground that the boy was a trespasser on the premises and that the defendant, therefore, owed him no duty of care. From the judgment entered upon the verdict, plaintiffs appealed to the Appellate Division where it was affirmed by a divided court.

DeWitt Clinton Park is a public park owned, maintained and supervised by the defendant and located between Eleventh and Twelfth avenues on the east and west ends and between Fifty-second and Fifty-fourth streets on the north and south sides. It had been used for many years, among other things, as a playground for large numbers of children of the neighborhood during the summer months. A large athletic field, embracing nearly one-half of the entire park area, was located on the east end of the tract. Immediately to the west of the athletic field was a pavilion, a children's playground and a wading pool. Immediately to the west of these facilities was an open space adjoining which, on the west, was a building over 200 feet long north and south, 34 feet 6 inches wide and 7 feet high. There was a basement area along each side of the building about 34 feet long and approximately 6 feet below the street level. The boy, with two companions, was on top of the roof of the building above described near one of the edges when he turned to speak to one of his companions and stubbed his foot on one of the iron bars on the edge of the roof of which, he claims, he was unaware. He plunged over the side into the areaway some 15 feet below and received severe and, he claims, permanent injuries. There were some thirty other children playing on the roof when the accident happened.

In the year 1917 and prior thereto, a superstructure or pagoda had existed on top of the building with posts around the sides to hold it in position. The posts were moored to the building by three-quarter inch iron rods about ten inches in length above the floor surface. The

superstructure was torn away from the iron bars and blown down by a storm that occurred in 1917, leaving the iron bars protruding all around and above the cement floor. All or a part of these bars were at the time or subsequently bent over so that at the time of the accident they extended varying distances above the floor. What had been the floor of the pagoda became and remained the roof of the building. It consisted of a concrete slab extending, on all sides, to and flush with the outside walls of the building. No railing or fence was constructed nor any means whatever maintained by the city to protect children or others using the roof from falling off. The city asserts that nothing of the sort was necessary because after the pagoda had been removed the floor was no longer used for park purposes and entrance thereto had been closed.

The evidence indicates that there was a walk fifteen feet in width extending along the north side of the athletic field, children's playground and the building in question which opened at the southwest corner of Twelfth avenue and Fifty-fourth street and a similar walk along those designated portions of the park on the southerly side emerging at the northeast corner of Twelfth avenue and Fifty-second street, both of which were open to and used by any and all persons desiring to use them. In fact, they were the only entrances to the park from Twelfth avenue. Persons entering the park from Twelfth avenue or leaving the park at the west end necessarily passed along the north and south ends of the building. Leading from these walks on each end of the building was a flight of concrete steps, a " grand staircase," about ten feet in width leading upwards to the cement floor. Evidence was introduced to indicate that from 1917 to the time of the accident there was a barricade about six feet high at the top of the stairway leading from the walk to the northerly end of the building. A number of witnesses testified that there was no barricade to the entrance

from the stairway located at the southerly end and had been none for a number of months prior to the accident. Whether either one of those barricades existed and, if they or either of them existed, whether access to the roof was adequately closed to the public by such contrivances or by other means were sharply contested questions of fact. Evidence was introduced which, if credible, indicated that there was no line of demarcation between the playground proper and the building and that there was nothing to indicate that the building and its top surface did not constitute a part of the park facilities available to anyone who might desire to use it and that the flat cement roof had been used continously by the injured boy and by large numbers of other children as a playground and by adults for recreation purposes for many months prior to the accident. Thus it might be found that adequate notice was brought home to the city of its use.

There was evidence from which it might be found that there was a clear invitation, either express or implied, to children playing in the park and rightfully there to run up the steps of the building where the accident occurred and play on the roof. Neither the injured boy nor those children could be deemed trespassers or mere licensees as matter of law. The mere fact that there were no playground facilities maintained on the roof or that the iron bars extended above the roof and could be seen and did not constitute a hidden trap does not change the result. The jury might find that the bars constituted an unwarranted obstruction to a place where children were invited or might reasonably be expected to be. In the matter of the construction of facilities for public use within the park and in the operation, maintenance and supervision of the park and of the facilities provided, the city was not exercising a governmental function and the duty devolved upon it to exercise ordinary care (*Van Dyke* v. *City of Utica*, 203 App. Div. 26; *Edinger* v. *City of Buffalo*,

213 N. Y. 674; *Peterson* v. *City of New York,* 267 N. Y. 204; *Curcio* v. *City of New York,* 275 N. Y. 20, 23; *Fritz* v. *City of Buffalo,* 277 N. Y. 710). As to those rightfully in the park and upon the building in question, the defendant was bound to exercise reasonable care to see that the building was safe for their use and to exercise suitable supervision over its use (*Curcio* v. *City of New York, supra*). In deciding what would be reasonable care under the circumstances, the jury were entitled to take into consideration the well-known propensities of children to climb about and play (*Parnell* v. *Holland Furnace Co.,* 234 App. Div. 567; affd., 260 N. Y. 604). That rule applies even though a child might be deemed technically a trespasser (*Connell* v. *Berland,* 223 App. Div. 234; affd., 248 N. Y. 641). Assuming that the jury should find as a fact that the defendant undertook to notify persons in the park that the roof was not available for use, whether such notice was adequate under all the circumstances and whether defendant had performed its duty of ordinary care would still be questions of fact which the court was unauthorized to settle as matter of law.

It might be found that, to all intents and purposes, the building was part and parcel of the playground. If not, it was in immediate proximity to it. It was part of the park proper. Even though the building was not part of the playground and park facilities, if there was no visible line of demarcation between the two or reasonably adequate barricades to the roof and the city had notice of and failed to remedy its defective condition if any such existed, in view of the location of the building and its nearness to the playground and the propensity of children to roam and climb and play, the city would be liable to one rightfully using the park and injured through the defect in the building if he, himself, were free from contributory negligence (*Jewhurst* v. *City of Syracuse,* 108 N. Y. 303; *Lessin* v. *Board of Education,* 247 N. Y. 503, 508). The city knew of and recognized the danger of

any one using the roof after the superstructure had been blown off, for it excluded everyone from the roof by adequate barricades at the entrances for the period of fifteen years to some six months before the accident. Whether the action could be maintained on the basis of nuisance as well as under the theory of negligence would depend upon the facts adduced at the new trial and is a matter upon which we need not pass at this time. The defendant might reasonably anticipate the happening of an accident such as the one that happened in this case.

The park together with the land on which the building in question was located was originally included under the jurisdiction of the Park Department of the City of New York. It appears in the record that, by Local Law No. 9 for the year 1931 (Local Laws, 1931, p. 107), the Municipal Assembly authorized the transfer of jurisdiction of the land on which the building was located together with the building as a part thereof from the Park Commission of the Borough of Manhattan to the Commissioners of the Sinking Fund and from them to the President of the Borough of Manhattan for street purposes. Therefrom might arise the inference that the jurisdiction of such property was in the office of the Borough President at the time of the accident. Upon the record before us I am unable to see what difference it would make in the degree of care which the city might be required to exercise with reference to the injured boy whether the building was under the supervision of the Park Department or under the supervision of the office of the Borough President. If of any importance or materiality, the question, as the evidence now stands, was one of fact for the jury.

There are many facts in dispute in the case at bar which are material to a correct decision of the issues raised by the pleadings all of which should have been submitted to the jury for determination. We do not attempt to name them all. The record does not disclose a case

where a direction of verdict was proper. The question of plaintiff's freedom from contributory negligence and of the defendant's negligence were questions of fact for the jury.

The judgments should be reversed and a new trial granted, with costs to appellants in all courts to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.