David Charles FOSS, as parent and natural guardian of David Gerald Warren Foss, minor child, and David Charles Foss, individually, Appellant,

v.

Jeremy KINCADE, et al., defendants and third party plaintiffs, Respondents,

v.

Peggy Foss, third party defendant, Respondent.

No. A07–313.

Court of Appeals of Minnesota.

April 8, 2008.

Thomas G. Johnson, Todd M. Kleinhuizen, Johnson, Moody, Schmidt & Kleinhuizen, P.A., Willmar, MN, for appellant.

Louise Dovre Bjorkman, John M. Bjorkman, Mark A. Solheim, Larson King, LLP, St. Paul, MN, for respondents Jeremy Kincade, et al.

Peggy Foss, Lonsdale, MN, pro se, respondent.

Considered and decided by WILLIS, Presiding Judge; WRIGHT, Judge; and PORITSKY, Judge.[*]

## OPINION

WILLIS, Judge.

This appeal arises from a negligence action brought by appellant, whose child was injured when an empty bookcase fell onto him during a visit with his mother to respondents' home. The district court granted summary judgment dismissing appellant's complaint, concluding as a matter of law that respondents did not have a duty to protect appellant's child from the danger posed by the bookcase. We affirm.

## FACTS

David Gerald Warren Foss was injured during a visit with his mother, Peggy Foss, to the home of family friends, respondents Jeremy and Stephanie Kincade. David, then three years old, was playing on the main floor of the Kincades' home while Peggy Foss and Stephanie Kincade talked in the kitchen. The two women heard a crash coming from a first-floor bedroom

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

and discovered David under a fallen bookcase. The parties believe that David was climbing on the bookcase when it fell onto him.

David Charles Foss (Foss) asserted a negligence claim against the Kincades on behalf of himself and his son David. Foss alleged that the Kincades were negligent both in failing to secure the bookcase and in failing to warn David of the danger posed by the bookcase. The Kincades moved for summary judgment, arguing that they owed no duty to protect David, who was under the supervision of his mother at the time. The district court granted the motion, and this appeal follows.

## ISSUE

Did the district court err by concluding that the homeowners owed no duty as a matter of law to protect a three-year-old child visitor under his mother's supervision?

## ANALYSIS

### I.

■ This court reviews de novo a district court's decision on a motion for summary judgment. See Gagliardi v. Ortho–Midwest, Inc., 733 N.W.2d 171, 175 (Minn. App.2007). Summary judgment is appropriately granted when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; see also Louis v. Louis, 636 N.W.2d 314, 318 (Minn.2001). In a negligence case, the defendant is entitled to summary judgment when there is a complete lack of proof on any of the four elements necessary for recovery, including, as relevant to this case, the existence of a duty. See Louis, 636 N.W.2d at 318.

■ "Any legal analysis of an action brought against a landowner alleging negligence must begin with an inquiry into whether the landowner owed the entrant a duty." Id. (citing Baber v. Dill, 531 N.W.2d 493, 495 (Minn.1995)). Generally, the existence of a duty is an issue of law for the court to determine. Id. Foss does not assert that the Kincades owed a duty to protect or warn David's mother. Indeed, the parties agree that the risk of a bookcase tipping over is obvious to an adult. See Munoz v. Applebaum's Food Market, Inc., 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972) (concluding that landowners owe no duty with respect to obvious dangers). The issue before us, then, is whether the Kincades owed a duty directly to David, who, because of his young age, was unable to appreciate the danger posed by climbing on the bookcase.

Because David is a child, Foss asserts that the determination of duty in this case should be governed by the standard applied to child trespassers under Restatement (Second) of Torts § 339 (1965), which requires landowners to anticipate and protect against dangers that, although obvious to adults, may not be recognized and heeded by children. Our supreme court has applied the Restatement standard to all child entrants, regardless of their status as trespassers, licenses, or invitees. See Meagher v. Hirt, 232 Minn. 336, 339–40, 45 N.W.2d 563, 565 (1951). But the supreme court has also held that the Restatement standard does not apply to children injured while in the company of their parents in areas where one would not expect to find unaccompanied children. See Sirek v. State, Dep't of Natural Res., 496 N.W.2d 807, 811 (Minn.1993) (holding that child-trespasser standard did not apply to child injured while visiting state trails with her parents because unaccompanied children

did not frequent isolated state trail).[1] The supreme court has further recognized that the Restatement standard does not apply to dangers that "may reasonably be expected to be understood and appreciated by any child of an age to be allowed at large." *Id.* (citing Restatement (Second) of Torts § 339 cmt. j).

Here, David visited the Kincades' home in the company of and under the supervision of his mother, who concedes that a three-year-old child must be watched constantly. At three years of age, David could not be expected to enter the Kincades' home on his own, nor was he of an age "to be allowed at large." *See id.* Under these circumstances, we conclude that the Restatement standard for the duty owed to child trespassers does not apply.

In 1972, the Minnesota Supreme Court eliminated the categorical distinctions between duties owed to invitees and licensees, and held that landowners' liability to persons injured on their premises should be determined under "ordinary standards of negligence." *See Peterson v. Balach,* 294 Minn. 161, 173, 199 N.W.2d 639, 647 (1972). Following *Balach,* the duty of a property owner to "inspect, repair, or warn those who come upon the land" is decided under "the test of reasonable care." *Id.*

In determining whether the Kincades owed a duty to David in this case, we begin with several basic negligence principles. First, a negligence claim may be premised on either a person's acts or failure to act. *See* Restatement (Second) Torts § 284. But negligence arises from a person's failure to act only when that person owes a duty to the injured party. *Id.* There is generally no duty to act for the protection of others. *Id.* § 314. Such a duty may be found to exist, however, based on the relationship between the parties and the foreseeability of harm. *See Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn. 1989).

The relationship between the parties here—landowner and social guest—is not disputed,[2] but the parties do dispute the foreseeability of the incident that caused David's injuries. Foss argues that it was entirely foreseeable that a three-year-old boy, curious by nature, would attempt to climb on an empty bookcase. The Kincades reply that, while it may have been *conceivable* that a child would climb the bookcase, it was not foreseeable in the legal sense of that word.

The concept of foreseeability has been a challenging one for both courts and litigants. *See* W. Jonathan Cardi, *Purging Foreseeability, The New Vision of Judicial Power in the Proposed Restatement (Third) of Torts,* 58 Vand. L.Rev. 739, 744 (2005) (characterizing the concept as "among the most confounding in the common law").[3] Literally construed, to fore-

1. We are aware that the supreme court's holding in *Sirek* was also influenced by the limited statutory immunity afforded to state agencies for injuries sustained in state parks under Minn.Stat. § 3.736, subd. 3(h) (1992). *See Sirek,* 496 N.W.2d at 811. But we read the *Sirek* holding to rely principally on the fact that the child was accompanied by her parents in an area where children were unlikely to be present without parental supervision. *See id.*

2. Minnesota courts have most frequently addressed the existence of a duty to protect in

the context of so-called "special relationships," which arise when a person "accepts responsibility to protect another, although there was no initial duty." *Lundman v. McKown,* 530 N.W.2d 807, 820 (Minn.App. 1995), *review denied* (Minn. May 31, 1995). Foss does not assert that the Kincades owed a duty to protect David because of a special relationship.

3. The proposed Restatement (Third) of Torts takes the position that foreseeability should not play a role in duty determinations, arguing that the reasons for a no-duty determina-

see is to know beforehand. *See The American Heritage Dictionary* 689 (4th ed.2000). But in jurisprudence, the concept of foreseeability is not strictly literal, but rather encompasses policy considerations as well. *See Black's Law Dictionary* 676 (8th ed.1999) (defining foreseeability as "the quality of being *reasonably* anticipatable" (emphasis added)). Thus, our supreme court has held that a duty will not lie when the connection between the damage-causing event and the alleged negligent act is "too remote to impose liability as a matter of public policy." *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn.1986) (stating that improper use of a product *"need not be* anticipated by the manufacturer" (emphasis added)); *see also Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 919 (Minn.1998) (holding that risk of collision between toboggan and parked snowmobile "was not one which Yamaha *was required to* anticipate or protect against" (emphasis added)); *cf. Peterson v. Richfield Plaza, Inc.*, 252 Minn. 215, 222, 89 N.W.2d 712, 718 (1958) (finding foreseeability but acknowledging that cases could be found expressing a contrary view on the foreseeability of the particular harm, and declining to follow those cases).

■ "When the issue of foreseeability is clear, the courts, as a matter of law, should decide it." *Whiteford*, 582 N.W.2d at 918. In closer cases, the issue should be sent to the jury. *Id.* In this case, in consideration of all of the circumstances, we agree with the district court that David's injury was not foreseeable and thus that the Kincades did not owe a duty to him as a matter of law.

tion should be "articulated directly without obscuring references to foreseeability." Restatement (Third) of Torts § 7 cmt. j (Proposed Final Draft No. 1). This portion of the

The presence of David's mother is central to our determination. Minnesota caselaw recognizes that the primary responsibility for the protection of a child rests with the child's parents. For instance, in *Sirek*, the Minnesota Supreme Court explained that "[w]hen small children are being watched by their parents, or entrusted persons in supervision, landowners may be relieved of a duty to warn them of or remove dangerous instrumentality[sic][,] the danger from which is apparent." 496 N.W.2d at 811 (quotation omitted); *see also id.* ("[I]f a child is too young chronologically or mentally to be 'at large,' the duty to supervise that child as to obvious risks lies primarily with the accompanying parent." (quotation omitted)).

This court's decisions likewise have recognized the paramount duty of parents to protect their children. In holding that a child's uncle did not have a duty to protect her from abuse by her father, we explained that "[t]he responsibility for supervision of [a] child may be relinquished or obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility." *See Sunnarborg v. Howard*, 581 N.W.2d 397, 399 (Minn.App.1998) (quoting *Laser v. Wilson*, 58 Md.App. 434, 473 A.2d 523, 528–29 (1984)) (quotation marks omitted), *review denied* (Minn. Sept. 22, 1998). Although the *Sunnarborg* decision turned on whether a special relationship existed, an issue not presented here, the Maryland case from which it quotes is a premises-liability case. The Maryland court continued:

Third Restatement has neither been published by the American Law Institute nor adopted by our supreme court, and, thus, we do not apply it here.

A host or hostess can not be required to follow from room to room an active two year old—brought by his parents—protecting him from his indiscretions and the innumerable obvious though dangerous conditions that exist in every home. *Laser,* 473 A.2d at 529. We agree with this reasoning. It would be contrary to our societal norms to expect a homeowner to take charge of another's child, particularly in the presence of the child's parent. Thus, consistent with the foregoing cases, we conclude that the paramount duty to provide for a child's safety rests with that child's parents and cannot be delegated merely by entering the home of another.

Our determination here also takes into account the fact that David was injured while visiting a private residence. The incident at issue took place in the Kincades' home, which a child could not reasonably be expected to enter on his own. This is not a case involving "child invitees or licensees who wandered away from their parents in business places where their *unsupervised* presence could reasonably be anticipated." *Sirek,* 496 N.W.2d at 811. Thus, cases involving injury to children visiting retail establishments do not control our decision here. *See Szyplinski v. Midwest Mobile Home Supply Co.,* 308 Minn. 152, 156, 241 N.W.2d 306, 309 (1976) (affirming verdict based on duty owed by storeowner to protect child from machinery that storeowner knew or should have known could fall over on child visitors); *Peterson,* 252 Minn. at 222, 89 N.W.2d at 718 (affirming verdict based on duty owed by storeowner to protect child from insufficiently guarded balcony on which storeowner had seen children playing).

Finally, we note that the object causing injury in this case was a common household object—something that one might expect to find in any home. Foss argues that the bookcase posed a particular haz-ard because it was empty and not secured to the wall. Little imagination is required, however, to construct a list of many other potentially hazardous items present in most, if not all, homes. Imposing duties on homeowners to protect child visitors of all ages and personalities from these hazards would be tantamount to mandating childproofing requirements for private residences. *Cf. Sirek,* 496 N.W.2d at 811 (explaining that imposing liability for injuries suffered by children accompanied by their parents in state parks "would require the 'childproofing' of vast areas of state parks"). Such a standard would not only be overreaching but also fraught with uncertainty. Even knowing the ages of potential child visitors would not apprise homeowners of the level of childproofing necessary to discharge their duty. Indeed, the Kincades believed that their home was safe for their own children, including their own three-year-old son.

Considering the circumstances as a whole, we conclude that the risk of harm to David was "too remote to impose liability as a matter of public policy." *Germann,* 395 N.W.2d at 924. Our conclusion that no duty existed in this case is based on the totality of these circumstances before us. We do not hold that landowners can never have a duty to protect children on their premises. For example, the duty of reasonable care owed to all entrants may require homeowners to warn or protect both parent and child visitors from latent dangers in their homes. *See Olmanson v. Lesueur County,* 693 N.W.2d 876, 880–81 (Minn.2005) (describing duty of reasonable care to all entrants). And of course, when a parent entrusts a child's care to another person who accepts that undertaking, that person owes a duty to keep the child safe. *See Bjerke v. Johnson,* 727 N.W.2d 183, 190 (Minn.App.2007), *aff'd,* 742 N.W.2d 660 (Minn.2007).

## II.

Foss asserts that summary judgment should have been denied because of the Kincades' spoliation of evidence. More than a year before this litigation was initiated, the Kincades disposed of the bookcase that fell on David. Foss asserts that he was prejudiced by not being able to examine the bookcase; that he is entitled to an inference that the bookcase had hardware affixed to it for wall mounting; and that such an inference would preclude the entry of summary judgment. We disagree.

Initially, we note that, although it was briefed and argued below, the spoliation issue was not resolved by the district court. When a spoliation issue is raised, "the trial court is not only empowered, but is obligated to determine the consequences of the evidentiary loss." *Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn. 1995). And we generally decline to resolve issues not addressed below. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (limiting issues on appeal to those raised and addressed below). Nevertheless, in the interest of judicial economy, we address Foss's spoliation argument here. *See* Minn. R. Civ.App. P. 103.04.

We discern no prejudice that would justify the sanction that Foss seeks here. *See Wajda v. Kingsbury*, 652 N.W.2d 856, 860 (Minn.App.2002) (explaining that the appropriateness of a sanction for spoliation of evidence is determined by the prejudice to the opposing party). Foss was able to present evidence of the bookcase through a photograph of it and through testimony regarding its characteristics. And Foss's expert had no trouble rendering opinions based on a photograph of the bookcase, including the opinion that the accident could have been prevented with the use of wall brackets. There was no dispute that the Kincades could have attached the bookcase to the wall. The precise characteristics of the bookcase simply are not relevant to the determination of the issues in this case. Accordingly, spoliation sanctions are not appropriate.

## DECISION

Under the reasonable-care standard, the duty owed by a landowner must be determined based on the particular circumstances of each case. *Balach*, 294 Minn. at 174, 199 N.W.2d at 648. After considering the totality of the circumstances here, we conclude that the Kincades did not owe a duty to protect David from the danger posed by the empty bookcase. And we conclude that sanctions for spoliation of evidence are not appropriate. Accordingly, we affirm the district court's grant of summary judgment to the Kincades.

**Affirmed.**