David FOSS, (as parent and natural guardian of David Gerald Warren Foss, minor child, and David Foss, individually), Appellant,

v.

Jeremy KINCADE and Stephanie Kincade, Defendants and Third–Party Plaintiffs, Respondents/Appellants,

v.

Peggy Foss, Third–Party Defendant/Respondent.

No. A07–0313.

Supreme Court of Minnesota.

May 14, 2009.

Thomas G. Johnson, Todd M. Kleinhuizen, Johnson, Moody, Schmidt & Kleinhuizen, P.A., Willmar, Minnesota, for appellant.

John M. Bjorkman, Mark A. Solheim, Larson King, LLP, St. Paul, Minnesota, for third-party plaintiffs, respondents/appellants.

Peggy Foss, Lonsdale, Minnesota, *pro se*, third-party defendant/respondent.

## OPINION

ANDERSON, PAUL H., Justice.

On October 15, 2003, three-year-old David Foss, Jr., was seriously injured by a falling bookcase while he was a guest in the home of respondents Stephanie and Jeremy Kincade. David Foss, Sr., on behalf of himself and his son, brought this action against the Kincades alleging that the Kincades' negligent failure to secure the bookcase to a wall was the cause of David's injuries. The Rice County District Court granted summary judgment in favor of the Kincades, and the Minnesota Court of Appeals affirmed. We conclude that the Kincades did not owe a legal duty to affix a typical household object because the harm that occurred was not foreseeable. Therefore, we affirm.

On the afternoon of October 15, 2003, Peggy Foss, David's mother and Stephanie Kincade's longtime friend, had taken David and his nine-year-old sister on a visit to the Kincade home. The Kincade family had moved into the Foss's neighborhood a few weeks earlier and, as a result of the move, there were boxes around the house and some of the rooms were relatively empty of furniture. On that afternoon, the two women were visiting as their children played. While talking in the dining room, Peggy Foss and Stephanie Kincade heard a loud bang. They proceeded quickly to discover the source of the noise. The two women went to where they believed the sound had originated-a small spare bedroom located a few steps from the dining room. Upon entering the room, the women saw that a bookshelf, approximately six feet tall by three feet wide, had fallen over onto the carpeted floor.

Peggy Foss and Stephanie Kincade promptly lifted the bookcase and discovered three-year-old David underneath it. According to his mother, David was bleeding and turning blue. Stephanie Kincade quickly called 911, and an ambulance arrived to take David to the hospital. Because of the accident, David suffered serious injuries to his head, was hospitalized, and underwent several invasive surgical procedures. David's injuries caused permanent disfigurement to the left side of his face and possible future eye complications.

David's father, David Foss, Sr. (Foss), commenced this action against Jeremy and Stephanie Kincade in September 2005, claiming the Kincades' negligence caused David's injuries. Specifically, Foss claims that the Kincades were negligent in failing to secure the empty bookcase to the wall to prevent it from tipping over.

Peggy Foss gave deposition testimony that she had seen David climb shelves and furniture in her own home before the accident and had warned David not to do so. Peggy Foss said she was unaware of the bookcase in the Kincades' spare bedroom, but admitted she had probably been in the room at some point. While Peggy Foss acknowledges that she never specifically told the Kincades that David climbed furniture, she claims they were aware that David was a very active child.

The Kincades gave deposition testimony acknowledging that a bookcase could tip over, but said they did not consider the bookcase in the spare bedroom to be a hazard to their own children. After the accident, the Kincades remodeled the spare bedroom, and moved the bookcase to the garage. Although the Kincades were contacted by an insurance representative about possible claims on David's behalf, the Kincades threw the bookcase away in the spring of 2004.

The Kincades moved for summary judgment. The district court granted the motion, concluding that the Kincades owed no duty to David because the accident was not foreseeable. The court of appeals affirmed the district court, holding that because of the presence of Peggy Foss, the harm that occurred was not foreseeable, and therefore, the Kincades did not owe David a duty as matter of law. *Foss ex rel. Foss v. Kincade*, 746 N.W.2d 912, 916 (Minn.App.2008). The court also concluded that Foss was not prejudiced by the Kincades' disposal of the bookcase. *Id.* at 918. Foss appealed to our court, arguing that a landowner owes a duty of care to children invited on the premises and that the presence of the child's parent does not eliminate the duty owed by the landowner. Foss also sought review on the court of appeals' decision on the disposal of the bookcase.

## I.

■ Summary judgment is appropriate when a district court concludes that "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment for genuine issues of material fact and to determine whether the court erred in its application of law. *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn.2001). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.* The existence of a legal duty in a negligence case, however, is a question of law that is reviewed de novo. *Id.*

■ Foss argues that the Kincades' negligence was the cause of the injuries David sustained at the Kincades' residence. In order to establish a prima facie case of negligence, Foss must show the following elements: (1) that the Kincades owed a duty to David; (2) that the Kincades breached that duty; (3) that the breach of duty was the proximate cause of David's injury; and (4) that David did in fact suffer an injury. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 155 (Minn. 1982). The Kincades are entitled to summary judgment if the record reflects a complete lack of proof on any of the four elements of a prima facie case. *Louis*, 636 N.W.2d at 318.

■ Analyzing an action brought against a landowner alleging negligence begins "with an inquiry into whether the landowner owed the entrant a duty." *Id.* (citing *Baber v. Dill*, 531 N.W.2d 493, 495 (Minn.1995)). Historically in landowner cases, the duty owed to an entrant varied depending on the entrant's status on the land. *Peterson ex rel. Peterson v. Balach*, 294 Minn. 161, 163–64, 199 N.W.2d 639, 641–42 (1972). A landowner owed a greater duty to a licensee than a trespasser and an even greater duty to a business invitee than to a licensee. *Id.* at 163–175, 199 N.W.2d at 641–646. But in *Peterson v. Balach* we "abolish[ed] the traditional distinctions governing licensees and invitees" in determining a landowner's duty. *Id.* at 164, 199 N.W.2d at 642.

*Peterson* arose from the death of a child who, while an overnight guest in the defendant's cabin, was killed by carbon monoxide poisoning from a faulty propane refrigerator. *Id.* at 162–163, 199 N.W.2d at 641. As part of our analysis in *Peterson*, we held that a landowner owed a duty "to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of the individuals." *Id.* at 174, 199 N.W.2d at 647. Under the rule announced in *Peterson*, "the extent of the duty of the owner to inspect, repair, or warn those who come upon the land as licensees or invitees will be decided by the

test of reasonable care." *Id.* According to *Peterson,* among the factors that might be considered in determining liability are "the circumstances under which the entrant enters the land (licensee or invitee); foreseeability or possibility of harm; duty to inspect, repair, or warn; reasonableness of inspection or repair; and opportunity and ease of repair or correction." *Id.* at 174, 199 N.W.2d at 648 n. 7.

■ Foss argues for application of the child trespasser standard as the minimum standard of care of this case. Before *Peterson,* landowner negligence cases involving injuries to children were decided using the standard on child trespassers, regardless of "whether the child is an invitee, licensee, or trespasser."[1] *Meagher ex rel. Meagher v. Hirt,* 232 Minn. 336, 339, 45 N.W.2d 563, 565 (1951) (citing Restatement Torts (Tent. Draft No. 4) § 209 which was later adopted in Restatement (Second) Torts § 339). Cases decided after *Peterson* clarified that the child trespasser standard is the minimum standard of care and that child licensees and invitees have greater protection than a trespasser. *See Szyplinski ex rel. Szyplinski v. Midwest Mobile Home Supply Co.,* 308 Minn. 152, 155–56, 241 N.W.2d 306, 309 (1976). Therefore, although the child trespasser standard may set the minimum standard of care, the standard of care applicable to a child injured on a landowner's premises is the general duty of reasonable care. *E.g., Canada ex rel. Landy v. McCarthy,* 567 N.W.2d 496, 504–05 (Minn. 1997).

■ The result of this approach, as in any premises liability negligence case, is that the "landowner's duty of reasonable care is modified according to the expected use of the land." *Olmanson v. LeSueur County,* 693 N.W.2d 876, 880–81 (Minn. 2005). Here, we must determine whether the harm to David implicated the Kincades' duty "to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of the individuals." *Peterson,* 294 Minn. at 174, 199 N.W.2d at 647.

The Kincades urge us to adopt the rationale articulated by the court of appeals, which would limit their liability for David's injuries based on the presence of Peggy Foss at the time of the accident. *Foss,* 746 N.W.2d at 916–17. The argument is premised on our language in *Sirek v. Department of Natural Resources,* 496 N.W.2d 807 (Minn.1993). *Sirek* involved a child who was injured at a state-owned recreational area, which she was visiting with her parents. *Id.* at 808. Because the area was publicly-owned, we concluded that the state had limited statutory immunity under the Minnesota Tort Claims Act

1. The standard set for child trespassers in § 339 is as follows:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children,

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

and could not be held liable unless a trespasser could recover for the injuries sustained. *Id.* at 809 (applying Minn.Stat. § 3.736 subd. 3(h) (1992)). We therefore had to determine which standard of care applied: the standard applicable to an adult trespasser or the standard applicable to a child trespasser.

In *Sirek,* we distinguished cases in which an injured child had recovered damages for injuries suffered in the presence of his or her parents. 496 N.W.2d at 811 (referring to *Peterson ex rel. Peterson v. Richfield Plaza, Inc.,* 252 Minn. 215, 89 N.W.2d 712 (1958)). We explained that in those previous cases involving the presence or absence of parents the injured children were invitees or licensees "who wandered away from their parents in business places" where the children's *"unsupervised* presence could reasonably be anticipated." 496 N.W.2d at 811. Because *Sirek* concerned a child injured while visiting a nature reserve, we said that it was expected that young children present at the reserve would be supervised. *Id.* at 810–11. Ultimately, we chose to apply the adult-trespasser standard in *Sirek,* in part because "if a child is too young chronologically or mentally to be 'at large,' the duty to supervise that child as to obvious risks lies primarily with the accompanying parent." *Id.* (quoting *Salinas v. Chicago Park Dist.,* 189 Ill.App.3d 55, 136 Ill.Dec. 660, 545 N.E.2d 184, 188 (1989)).

We have only applied *Sirek* to cases decided within the context of statutory immunity. *See, e.g., Johnson ex rel. Johnson v. Washington County,* 518 N.W.2d 594, 599 (Minn.1994). Further, we have found *Sirek* inapplicable to premises-liability-negligence cases when the injured child was invited onto the premises and was not a trespasser, noting that the " 'rule of law in trespass cases contrasts sharply from the duty of reasonable care owed by most landowners.' " *Canada,* 567 N.W.2d at 504 (quoting *Sirek,* 496 N.W.2d at 809).

We find this case to be similar to the situation presented in *Canada. Canada* concerned allegations that a child had become ill after the defendant—the landlord of an apartment where the injured child was frequently a guest of the tenant—failed to properly remove lead paint. *Id.* at 504. The landlord relied on *Sirek* to argue that even if he owed a duty to the child, he was relieved of liability because the child was under the care of an adult who was aware of the lead removal dangers. *Id.* at 505. In rejecting the landlord's argument, we said that the adults, including the landlord, each "owed an independent duty of care to [the child], and no duty was extinguished by the negligence of another." *Id.*

 We have never extended the rationale of *Sirek* to other premises liability cases, and we decline to so here. As we expressed in *Canada,* whether an invitee child's injuries might also be causally linked to a parent's failure to supervise is a question of comparative negligence, not a ground on which to extinguish the landowner's duty to maintain a safe premises for social guests. *See id.*

 Although we do not, as the court of appeals did, premise our holding here on the presence of Peggy Foss, we nonetheless conclude that the harm to David was not reasonably foreseeable. When determining whether a danger is foreseeable, we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.,* 582 N.W.2d 916, 918 (Minn.1998). A harm which is not objectively reasonable to expect is too remote to create liability. *Id.* Although in most cases the question of foreseeability is an

issue for the jury, the foreseeability of harm can be decided by the court as a matter of law when the issue is clear. *Id.*

■■■ Foss argues that because the Kincades, in their deposition testimony, admitted to being aware that a bookcase that is not secured to the wall could fall, the harm that occurred was sufficiently foreseeable to create an issue of fact for the jury. We disagree. When dealing with a three-year-old child, the realm of possible harm is much larger than the realm of reasonably foreseeable harm. It is not difficult to make a laundry list of common household items with which a three-year-old could conceivably injure himself, but negligence law does not require a homeowner to take every precaution to guard against every possible eventuality. For example, we would not expect homeowners to bolt down their table lamps before inviting a three-year-old into their house, even though it is possible that such a child could be injured by pulling the lamp onto himself.

Here, David was injured by a similar common household item-a freestanding bookcase. Such bookcases are a common feature in homes, yet homeowners do not expect their guests to climb on them. The Kincades' admission that it is within the "realm of conceivable possibility" that a bookcase could tip over, therefore, does not create an issue of fact. It is not objectively reasonable to expect a homeowner to foresee that a guest—even a child—will climb on a bookcase nor is it objectively reasonable to expect the homeowner to guard against that possibility.

Foss argues that the harm to David was foreseeable because the Kincades' bookcase was not secured to the wall, on a carpeted floor, and left empty. It is not difficult to imagine a different set of facts in which a jury question as to foreseeability would arise. For example, if the Kincades had actual knowledge that David

had a tendency to climb bookcases, the Kincades may have had a duty to secure the bookcase or at least to warn Peggy Foss of its unsecured condition. But those are not the facts before us. Here, the mere fact that the Kincades' bookcase was in a condition that made it more prone to tipping if climbed is unpersuasive because it was simply not reasonably foreseeable that David would try to climb on the bookcase.

## II.

■■■ Foss also argues that because the Kincades disposed of the bookcase after being contacted by an insurance representative, the court should draw an inference as to the condition of the bookcase that is unfavorable to the Kincades. In particular, Foss asserts that the bookcase may have had warning stickers that would prove that the Kincades were on notice that the bookcase could tip over. As the court of appeals noted, the issue of spoliation of evidence was raised, but not resolved, at the district court level. *Foss,* 746 N.W.2d at 918. Although appellate courts generally do not resolve issues not addressed by the district court, the court of appeals, in the interest of judicial economy, determined that the disposal of the bookcase did not warrant the sanction Foss requested. *Id.*

■■■ We agree with the court of appeal's resolution of this issue. A discovery sanction is only appropriate if the unavailability of the evidence results in prejudice to the opposing party. *Patton v. Newmar Corp.,* 538 N.W.2d 116, 119 (Minn.1995) (citing *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267 (8th Cir.1993)). "Implicit in that standard is the need to examine the nature of the item lost in the context of the claims asserted and the potential for remediation of the prejudice." *Id.* at 119. Applying the foregoing standard to this

case, the loss of the bookcase is not significant to Foss's case. The warning sought by Foss would only demonstrate that the Kincades were on notice that the bookcase could tip over. But the Kincades admit to knowing the bookcase was capable of tipping over, and therefore the disposal of the bookcase did not prejudice Foss.

Because we conclude that the harm that occurred to David Foss was not legally foreseeable, we hold that the Kincades had no duty to prevent the harm that occurred to him while at the Kincades' home. Therefore, we affirm the decision of the district court.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. I disagree with the court's determination that the Kincades had no duty to young David Foss because "it was simply not reasonably foreseeable that David would try to climb on the bookcase."

Other courts have noted "the known 'propensity' of children to roam and climb and play." *Dunbar ex rel. Blair v. NMM Glens Falls Assocs. LLC,* 263 A.D.2d 865, 693 N.Y.S.2d 746, 747 (N.Y.App.Div.1999) (citation omitted); *see also Orr v. First Nat'l Stores, Inc.,* 280 A.2d 785, 789 (Me. 1971) (observing that "young children have propensities to intermeddle and to indulge impulses to play and climb"); *Collentine ex rel. Collentine v. City of New York,* 279 N.Y. 119, 17 N.E.2d 792, 795 (1938) (holding that in deciding the care reasonable under the circumstances, the jury was "entitled to take into consideration the well-known propensities of children to climb about and play"). As one court put it, "Surely anyone familiar with young children, especially two-year-olds, is aware of their propensity to climb...." *Amos v. Alpha Prop. Mgmt.,* 73 Cal.App.4th 895, 87 Cal.Rptr.2d 34, 39 (Cal.Ct.App.1999). As a

father and now a grandfather, I must agree with these courts. In addition to courts that have recognized children's propensity to climb, any number of Internet websites discuss child safety and the propensity for children to climb. *See, e.g.,* Household Safety: Preventing Injuries From Falling, Climbing, and Grabbing, http://kidshealth.org/parent/firstaid_safe/home/safety_falls.html (last visited May 7, 2009). Given the known propensity of young children to climb, the court is simply wrong in holding that it was not "reasonably forseeable that David would try to climb on the bookcase."

I would hold that it is reasonably foreseeable as a matter of law that David might attempt to climb the bookcase, and I would reverse the lower courts and remand this matter to the district court for further proceedings.

I do, however, agree with the court's decision not to extend the rationale of *Sirek ex rel. Beaumaster v. Department of Natural Resources,* 496 N.W.2d 807 (Minn. 1993), to this case. I also agree with the court that the Kincades' disposal of the bookcase does not warrant sanctions. Although I would hold that it was foreseeable that David would attempt to climb the bookcase, the disposal of the bookcase is not significant to Mr. Foss's case, since the Kincades admit they knew the bookcase was susceptible to being tipped over.