Craig A. KELLOGG, et al., Appellants,

v.

Scott D. FINNEGAN, Respondent.

No. A12–0799.

Court of Appeals of Minnesota.

Nov. 13, 2012.

Mark D. Streed, Meshbesher & Spence, Ltd., Oakdale, MN, for appellants.

Karen R. Cote, David M. Werwie & Associates, St. Paul, MN, for respondent.

Considered and decided by JOHNSON, Chief Judge; KIRK, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellants dispute a summary judgment that respondent's loss of consciousness

---

* Retired judge of the Minnesota Court of Ap- peals, serving by appointment pursuant to

while driving was unforeseeable as a matter of law, no matter whether it was shown that the event involved a seizure or that it was an experience of falling asleep. Because the matters known to respondent before he lost consciousness gave him knowledge of the likeliness of falling asleep sufficient at least to require a jury to weigh the issue of foreseeability, we reverse in part. We affirm insofar as the district court concluded that respondent could not foresee that he might suffer a seizure.

## FACTS

On November 11, 2009, appellant Craig Kellogg was driving eastbound on Valley Creek Road in Woodbury around 4:30 p.m. when a vehicle driven westbound by respondent Scott Finnegan jumped the median and struck the front driver's side of appellant's vehicle. Respondent's vehicle then ricocheted from the collision and traveled forward until coming to a stop upon hitting a tree. Appellant saw respondent fall over toward the passenger's side just before the vehicle stopped. The parties agree that respondent lost consciousness before the accident, but they dispute whether respondent lost control of his vehicle due to falling asleep or suffering a seizure.

When medical personnel arrived, respondent appeared confused but had regained consciousness, and he told a paramedic that he had fallen asleep. Witnesses on the scene told medical personnel that it appeared respondent had suffered a seizure. After transportation of respondent to an area hospital, his hospital discharge papers included a diagnosis for a "seizure causing motor vehicle accident."

There is no dispute that respondent had never had a seizure prior to the collision. Since the 2009 collision, respondent has been diagnosed with brain atrophy, has had two seizures, and has been instructed by a doctor not to drive. Respondent had also previously fallen asleep while driving in 2006; in that instance, respondent had been driving for 12 hours before he fell asleep.

Following the 2009 Woodbury collision, appellant and his wife brought suit for injuries and loss of services, alleging that respondent negligently caused the crash. Appellants' suit is premised on the claim that respondent's loss of consciousness was foreseeable.

First, in his work as a registered nurse, respondent had previously displayed noticeable coordination issues, shaking hands, and a clumsy gait. Respondent could not keep his hands steady and had trouble skillfully inserting an I.V. Appellants presented evidence that respondent was aware of these issues and had not sought medical care, and that he had insight on the consequences of these medical issues because of his nursing profession.

Second, respondent also had been aware of his experience of sleep deprivation, and when he consulted with a physician on this issue, he failed to disclose his prior difficulties and numerous head injuries suffered over his lifetime.

Third, when seeking medical care for depression and sleep deprivation, which occurred just one week before the collision, respondent was given a prescription for two medications: Celexa and Trazodone.[1]

---

Minn. Const. art. VI, § 10.

1. Respondent did not disclose in his appointment to obtain medications that he had prior coordination issues or had a habit of using alcohol. The nurse who met with him at the time of the prescriptions testified that these disclosures would have altered his treatment plan because she would have been concerned

He knew from instructions given to him with the medications that he was at risk for drowsiness, impaired thinking, and reduced reaction time when using them; these instructions included the warning to "[b]e careful if you drive or do anything that requires you to be awake and alert"; he was not told he could not drive. In the aftermath of taking these medications, respondent continued to experience loss of sleep, but the evidence also included the fact that respondent reported he had slept for 20 hours straight before driving at the time of the collision.[2]

Fourth, in the medication instructions, respondent was told that he could not use alcohol, yet he continued his consumption; there was no showing of alcohol in his system at the time of the accident. Respondent had previously been treated for alcohol-related issues and was aware of warnings within his family as to his excessive use of alcohol; he specifically ignored warnings from his mother, who is also a registered nurse, about using alcohol after beginning to take the prescribed medications.

Finally, respondent suffered from what he described as a "little mental error," minutes before the collision and a half mile away, when he failed to engage the clutch in the vehicle while stopped at a filling station.

The district court entered summary judgment in respondent's favor, holding that respondent's loss of consciousness and the subsequent collision were unforeseeable, and that therefore respondent owed no duty to appellants. The court serially examined the facts that respondent knew and concluded that they were too remote as a matter of law to prompt anticipation of the occurrence of the accident itself— that the issue was "not close." This analysis was confined largely to respondent's medical history as it might suggest the foreseeability of a seizure. With respect to the prospect of falling asleep, the court acknowledged that theory, but noted that the only precedent that appellant relied on for the foreseeability of falling asleep involved situations where drivers were driving a long distance.[3]

## ISSUE

Whether the facts known to respondent before he lost consciousness and lost control of his vehicle created circumstances requiring that a jury determine whether the occurrence was foreseeable.

## ANALYSIS

 When reviewing summary judgment, an appellate court asks whether there are any genuine issues of material fact or the district court erred in its application of the law. Minn. R. Civ. P. 56.03; *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). A genuine issue of material fact does not exist when "the nonmoving party presents evidence which merely creates a metaphy-

---

about prescribing such medications and likely would have referred respondent both to a neurologist and for treatment for alcoholism.

2. A medical report states that respondent said he slept from 11 p.m. on November 10 until 6 p.m. on November 11. However, the collision occurred around 4:30 p.m. on November 11, thus this statement is implausible.

3. The district court cited to *Bushnell v. Bushnell*, 103 Conn. 583, 131 A. 432, 434–35 (1925), and *Hardgrove v. Bade*, 190 Minn. 523, 252 N.W. 334 (1934). Both cases addressed the unique circumstances of driving long distances, without breaking for lunch or overnight rest.

sical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997).

To prevail in a negligence action, a plaintiff must prove each of four elements: "the existence of a duty of care, a breach of that duty, an injury, and the breach of that duty being the proximate cause of the injury." *Louis v. Louis,* 636 N.W.2d 314, 318 (Minn.2001). Summary judgment is appropriate when the record lacks proof of any of the four elements. *Foss v. Kincade,* 766 N.W.2d 317, 320 (Minn.2009). "Duty is a threshold question." *Glorvigen v. Cirrus Design Corp.,* 816 N.W.2d 572, 582 (Minn.2012). If no duty exists, a court need not reach the remaining elements of a negligence claim. *See Baber v. Dill,* 531 N.W.2d 493, 495 (Minn.1995).

In a negligence case, the existence of a legal duty is a question of law that we review de novo. *Foss,* 766 N.W.2d at 320. There can be no duty unless the injury suffered is foreseeable. *Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 888 (Minn.2010). "If the injury is foreseeable, the duty owed is one of ordinary care." *Id.* To determine whether an injury was foreseeable, we look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility. *Domagala v. Rolland,* 805 N.W.2d 14, 27 (Minn.2011); *Foss,* 766 N.W.2d at 322; *Whiteford ex rel. Whiteford v. Yamaha Motor Corp.,* 582 N.W.2d 916, 918 (Minn.1998). "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether the possibility of an accident was clear to the person of ordinary prudence." *Domagala,* 805 N.W.2d at 27 (quotation omitted). "Although in most cases the question of foreseeability is an issue for the jury, the foreseeability of harm can be decided by the court as a matter of law when the issue is clear." *Foss,* 766 N.W.2d at 322–23.

We conclude that the record supports the district court's determination that the knowledge attributable to respondent prior to his loss of consciousness was insufficient to permit a jury to find it foreseeable that he would have a seizure. Appellants furnished no medical evidence, such as a physician's testimony to suggest that a seizure, if it occurred, was related to any prior symptoms, and there is no dispute that respondent had never had a seizure prior to the collision. In contrast, the record does not support the district court's additional determination that a person of ordinary prudence could not reasonably foresee the risk of falling asleep while driving his vehicle on the occasion of the collision.

There is evidence indicating respondent fell asleep at the wheel and that a jury could determine such an event was foreseeable to respondent. When medical personnel arrived, respondent told a paramedic that he had fallen asleep. A paramedic testified that without seeing someone have a seizure, he could not say whether the person suffered from a seizure because "[i]t could be many things" including "[m]edication." At the time of the collision, respondent was suffering from sleep deprivation sufficiently chronic that he decided to seek medical care. But when respondent sought out medical care and obtained prescription medication, he did not mention his significant alcohol use or prior symptoms, which a nurse testified it likely would have impacted his treatment plan. And although respondent knew from instructions he received that he was

at risk for drowsiness when using these medications and was told that he could not use alcohol, he used alcohol and did not take the medication as prescribed. All of this evidence indicates a triable claim that respondent had fallen asleep and that this occurrence was foreseeable.

It is anticipated that appellants will continue to assert that respondent fell asleep and respondent will claim that he suffered a seizure. A finding that respondent suffered a seizure would defeat appellants claim by reason of the district court's summary judgment on that issue, which we affirm. But upon a finding that respondent fell asleep before the collision, the facts in this case would permit a jury to reasonably conclude that this occurrence was foreseeable. In addition to other symptoms of medical problems, respondent had suffered sleep deprivation, had begun to take medications to deal with this, was warned that these medications would produce drowsiness, had the anomalous circumstance of sleeping for 20 hours prior to the incident, and had contradicted a medical instruction by consuming alcohol, albeit not so recently that it remained in his system at the time of the accident. These circumstances are distinct from older cases cited by the district court. *Bushnell* and *Hardgrove* indicate that a long

driving experience may be a prima facie showing of the prospect of falling asleep, but in those cases the only evidence of prior knowledge of the driver regarding his risk of sleep was how far or how long he had driven. The immediate case involved a different question, namely whether a combination of circumstances relating to sleepiness might establish foreseeability. The circumstances here preclude a summary judgment that would deny appellants the opportunity to present their claim of foreseeability to a jury.

### DECISION

Because the matters known to respondent before he lost consciousness were sufficient at least for the jury to determine the issue of foreseeability, we reverse in part. We affirm insofar as the district court concluded that appellants failed to show a genuine claim that respondent could foresee the suffering of a seizure.

**Affirmed in part and reversed in part.**