*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0249**

David Greve, et al.,
Appellants,

vs.

Breezy Point International, Inc.
d/b/a Breezy Point Resort,
Respondent

**Filed October 6, 2014
Affirmed
Peterson, Judge**

Crow Wing County District Court
File No. 18-CV-11-736

Marcia Kay Miller, James P. Carey, Sieben, Grose, Von Holtum & Carey, Ltd., Minneapolis, Minnesota (for appellants)

Peter Michael Waldeck, Waldeck Law Firm P A, Minneapolis, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

Appellants challenge the summary-judgment dismissal of their negligence claims arising out of the drowning death of a family member at respondent resort. Because appellants failed to present sufficient evidence to create a genuine fact issue on the element of causation, we affirm.

## FACTS

Nicholas Greve was staying with friends at a home on Pelican Lake. On Saturday evening, Greve and his friends went to the Dockside Bar at respondent Breezy Point International, Inc. d/b/a Breezy Point Resort. The bar was very crowded, and the friends got separated from each other. When the group reassembled at closing time, they could not find Greve and assumed that he had left with someone else.

When the friends were unable to contact Greve the next day, they became concerned and called police. A Breezy Point police officer found Greve's body beneath a floating dock at Breezy Point Resort. The cause of death was fresh-water drowning contributed to by acute ethanol intoxication. Greve's alcohol concentration was .188.

Police obtained a surveillance video from the Dockside Bar, which showed Greve sitting outside on the bar's deck operating his cell phone as if sending a text message. Greve left the deck and walked along the beach and onto the floating dock. The video recording is time-lapsed, so there are gaps when nothing was recorded. The time-stamp

on the last frame showing Greve is 1:42:54. The next time stamp is nine seconds later at 1:43:03.[1]

Appellants brought this action against respondent alleging violations of the civil-damages act and a negligence claim under the theory of premises liability. Respondent moved for summary judgment.

In opposing summary judgment, appellants retained two experts to give opinions on the cause of death. Toxicologist Lowell C. Van Berkom's affidavit addressed Greve's alcohol concentration and how it would have impaired his mental and physical functioning. Forensic Engineering Consultant Aaron D. Dunlop's affidavit identified tripping hazards on the dock created by installation defects and lack of maintenance, the foreseeability of harm given the tripping hazards, and measures that respondent could have taken to ensure safety.

The district court granted summary judgment for respondent. This appeal challenging the summary judgment on the negligence claim followed.

**D E C I S I O N**

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo, to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable

---

[1] The time-stamp was about 45 minutes behind actual time.

3

to the party against whom summary judgment was granted. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

On a negligence claim, a defendant is entitled to summary judgment when there is a complete lack of proof on any one of the four elements: (1) defendant owed a duty to plaintiff, (2) defendant breached that duty, (3) plaintiff was injured, and (4) defendant's breach of duty proximately caused plaintiff's injury. *Foss v. Kincade,* 766 N.W.2d 317, 320 (Minn. 2009) (premises-liability negligence case).

Appellants' theory of causation is that a hazardous condition on the floating dock caused Greve to enter the water. In arguing that the evidence is sufficient to create a genuine fact issue on the element of causation, appellants rely on *Kludinski v. Great N. Ry. Co.*, in which a railroad employee was killed when he was run over by a switch engine. 130 Minn. 222, 224, 153 N.W. 529, 530 (1915). The supreme court concluded that the following evidence was sufficient to prove that decedent was hit while cleaning a switch rather than at another location along the track:

> The work in which deceased was last engaged at switch No. 11, the absence of any occasion shown for his being on the track elsewhere, the wedged-in overshoe [caught between the switch bar and a tie], the position of the body, and the pool of blood near by, all point strongly to the conclusion that here was the place where deceased was first struck by the engine, and that the catching of his left foot between the switch bar and the tie compelled him to remain in a position where he could not avoid the approaching engine.

*Id.* at 224-25, 153 N.W. at 530. Decedent was last seen working at the switch about five or ten minutes before his body was discovered. *Id.* at 223, 135 N.W. at 529.

4

Greve was last seen on the surveillance video of the floating dock, and his body was discovered under the dock. But unlike in *Kludinski*, there was no evidence that Greve remained on the dock after the video was recorded or that the injuries Greve sustained supported the claim that he entered the water from the dock, and Greve's body was not discovered until about 15 hours after he was last seen on the surveillance video.

In *Abbett v. Cnty. of St. Louis*, this court stated:

> It is incumbent on the plaintiff in a negligence action to introduce evidence that would afford a reasonable basis for the conclusion that the defendant's alleged negligence proximately caused the plaintiff's injury. The plaintiff must show more than a mere possibility that the injury resulted from the defendant's act. A causal connection between the alleged negligence and the injury must be established beyond the point of speculation or conjecture.

474 N.W.2d 431, 434 (Minn. App. 1991) (affirming directed verdict for county on plaintiff's claim that his injuries resulted from the lack of a guardrail when plaintiff introduced no evidence showing what caused vehicle to leave road and plaintiff's theory of the case depended on expert's speculation about what could have happened if there had been a guardrail) (citations omitted); *see also Sauer v. State Farm Mut. Auto. Ins. Co.*, 379 N.W.2d 213, 215 (Minn. App. 1985) (affirming directed verdict for defense when no one witnessed collision between motorcycles and individuals involved did not remember what happened), *review denied* (Minn. Feb. 19, 1986).

*Abbett* and *Sauer* are directed-verdict cases, and the standard for granting a directed verdict is not identical to that for granting summary judgment. *See Carl v. Pennington*, 364 N.W.2d 455, 457 (Minn. App. 1985) (stating that summary judgment

5

may be inappropriate even if the evidence might be insufficient to withstand a directed verdict). But to withstand a summary-judgment motion, a party must present specific facts showing the existence of a genuine issue for trial, and speculation is insufficient to create a fact issue. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995); *see also Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 730 (Minn. 1990) (stating that "circumstantial evidence must be more than simply consistent with the plaintiff's theory of causation; reasonable minds must be able to conclude from the circumstances that the theory adopted outweighs and preponderates over opposing theories").

No evidence in the record indicates that the nine-second time lapse in video footage was insufficient time for Greve to have gotten out of surveillance range without having entered the water from the dock. And there is no evidence that indicates that finding Greve's body under the floating dock 15 hours after he was last seen makes it more likely than not that he entered the water from the dock, rather than from another location. Nor is there any evidence that a condition on the dock caused Greve to enter the water. Based on the evidence in the record, appellants' theory that a hazardous condition on the floating dock caused Greve to enter the water from the dock does not go beyond speculation, and the district court properly granted summary judgment for respondent based on the complete lack of proof of causation.

**Affirmed.**