Mary PATTON, et al., Respondents,

v.

**NEWMAR CORPORATION,**
Petitioner, Appellant.

No. C8–93–2546.

Supreme Court of Minnesota.

Sept. 29, 1995.

Stephen J. Foley and Russell D. Melton, Minneapolis, for appellant.

William O. Bongard, Minneapolis, for Mary Patton.

Wilbur W. Fluegel, Minneapolis, for Richard Patton.

## OPINION

COYNE, Justice.

We granted the defendant Newmar Corporation's petition for further review to discuss the breadth of the trial court's discretion to impose a sanction in this action to recover damages for alleged defects in the design of a motor home when, prior to the commencement of the action, the product itself was lost or destroyed. Concluding first that the trial court abused its discretion by completely excluding testimony of the plaintiffs' expert witness who had inspected the property before its destruction, the court of appeals then held that dismissal of the action was an excessive sanction for the negligent spoliation of evidence. *Patton v. Newmar Corp.,* 520 N.W.2d 4 (Minn.App.1994). We reverse and reinstate the summary judgment entered in favor of defendant.

Only a brief recitation of facts is necessary to an examination of the issue identified. In 1985 Mary and Richard Patton purchased a Kountry Aire motor home, manufactured by defendant Newmar Corporation, equipped with a dual fuel system. Thereafter, the motor home underwent two major repairs which are relevant to these proceedings: in 1986, the engine block was replaced when an oil pan leak caused the engine to "seize up" and in 1987, the transmission was removed and overhauled.

On March 23, 1988, the Pattons were traveling across California in their motor home when they heard a "pop" which sounded like a blown tire. Richard steered the motor home to the side of the interstate highway and, after he noticed flames coming from the engine compartment near the gas and brake pedals, he and Mary attempted to exit the vehicle by way of the passenger side door. While doing so, Mary either tripped or slipped and allegedly sustained an injury to her back.

After the fire, the vehicle was towed to an auto salvage yard in Arizona. Approximately 6 months later, plaintiffs' counsel retained an expert fire investigator to conduct an examination of what remained of the vehicle. During the course of this investigation, Daniel Buchaniec, the expert, extensively photographed the vehicle and removed and retained several unidentified components.

The Pattons commenced this action in October 1991 apparently alleging that Mary's injuries were the result of the defendant Newmar's negligence in its design of what they characterize as a faulty dual fuel system.[1] When the defendant requested to inspect the vehicle, it was informed that the

---

1. Because the pleadings are not contained in the district court file, we must assume that the parties have accurately portrayed this matter as a products liability-design defect action.

location of the motor home was not known and that the unidentified components removed and retained by the plaintiffs' expert had been lost. The defendant moved for summary judgment on multiple alternative grounds: that by virtue of the lost or misplaced evidence, the plaintiffs cannot demonstrate that the vehicle was in a defective and unreasonably dangerous condition at the time it left defendant's control; that there existed insufficient evidence that any defect or negligence of defendant caused the plaintiff's injuries; that either the action should be dismissed as a sanction for the spoliation of evidence or that any testimony of the plaintiffs' expert predicated upon his investigation and examination of the misplaced or destroyed motor home and its parts should be precluded; and, finally, that plaintiffs' breach of warranty claims are barred by the 4–year statute of limitations contained in Minn.Stat. § 336.2–725 (1992).

The trial court granted the motion, finding that the plaintiffs knew or should have known that the remains of the vehicle were important and relevant evidence which should have been preserved and that the defendant was prejudiced by its inability to inspect and perform tests on what remained of the product claimed to be defective. While the district court stated that dismissal of the action was the "appropriate sanction," the essence of its decision was actually that when all testimony and other evidence derivative of the plaintiffs' expert's investigation was excluded, the plaintiffs were left with insufficient evidence by which to establish a *prima facie* case of defendant's liability.

On plaintiffs' appeal from the summary judgment, the court of appeals drew upon our general analysis of the inherent powers of the court to conclude that courts are authorized to sanction a party for the spoliation of evidence, even where the party has not violated a court order and even when there has been no finding of bad faith. *See, generally, County of Ramsey v. Stevens,* 283 N.W.2d 918, 925 (Minn.1979). It suggested that the power to sanction is tempered by a "duty to impose the least restrictive sanction available under the circumstances." *See Bachmeier v. Wallwork Truck Centers,* 507

N.W.2d 527, 533 (N.D.1993). The court of appeals then reviewed this record to conclude, first, that a complete exclusion of the expert's testimony was excessive and then that summary judgment of dismissal of the plaintiffs' claim constituted both an abuse of the trial court's discretion and an excessive sanction. It reasoned that the destruction was neither wilful nor in bad faith and that the prejudice to the defendant could be remedied by a limitation on, but not total exclusion of, the testimony of the plaintiffs' expert.

A reading of the trial court's decision requires our observation that the court of appeals has misapprehended the nature and extent of the sanction imposed by the trial court. The only sanction imposed for the spoliation of the evidence was the exclusion of testimony and other evidence derived from the expert's inspection and investigation of the remains of the motor home. The summary judgment of dismissal was not itself a sanction, but only the inevitable consequence of the plaintiffs' failure, without evidence of the physical condition of the product itself, to raise genuine issues of material fact with regard to their claim of design defect liability.

The inquiry thus occasioned on review is therefore whether the trial court. is authorized to impose a sanction for spoliation of evidence and, if so, whether it abused its discretion by excluding as a sanction the testimony and documentary evidence obtained by plaintiffs' expert during his investigation.

■ While we have never specifically addressed the scope of the trial court's authority to impose a sanction for spoliation of evidence, we often have commented that courts are vested with considerable inherent judicial authority necessary to their "vital function—the disposition of individual cases to deliver remedies for wrongs and 'justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws.'" *See Clerk of Court's Compensation for Lyon County v. Lyon County Commissioners,* 308 Minn. 172, 177, 241 N.W.2d 781, 784 (1976); *County of Ramsey v. Stevens,* 283 N.W.2d 918, 925

(Minn.1979). The task of determining what, if any, sanction is to be imposed is implicated by the broad authority provided the trial court.

■■■ Certainly, the affirmative destruction of evidence has not been condoned. *Federated Mutual Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 437 (Minn.1990). But it is yet another matter when, apparently through inadvertence or negligence, evidence which is critical to a party's claim has been destroyed. It was that circumstance, similar to the factual setting here, which the United States Court of Appeals addressed in *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir.1993), and which prompted its conclusion that the trial court has the inherent power to impose sanctions. The court identified a reasonable and workable standard by which to test the impact of the spoliation—the prejudice to the opposing party. *Id.* at 267. Implicit in that standard is the need to examine the nature of the item lost in the context of the claims asserted and the potential for remediation of the prejudice. One challenging the trial court's choice of a sanction has the difficult burden of convincing an appellate court that the trial court abused its discretion—"a burden which is met only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate." *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir.1992).

■■■ We accept and apply those standards. The plaintiffs have asserted that the vehicle was defectively designed and have admitted that the vehicle was twice subjected to major repair or modifications—the extent and impact of which on their claim of defective design can never now be ascertained. The defendant has been deprived of an opportunity to examine this vehicle since it left its control and would be limited in the preparation of its defense to a reliance upon photographs, drawings and testimony of the plaintiffs' own investigative expert. Because the critical item of evidence no longer exists to speak for the plaintiffs' claims or to the defendant's defense, the trial court is not only empowered, but is obligated to determine the consequences of the evidentiary loss.

The trial court excluded the expert witness testimony and other evidence derived from his investigation. Under the facts and circumstances here, one cannot conclude that this evidentiary ruling constituted an abuse of the trial court's discretion, particularly given the obvious prejudice to the defendant if that testimony or the photographs were admitted. It must be emphasized that this is not simply a design defect case, where at least one court has suggested that the prejudice to the defendant from spoliation may be less than in a manufacturing defect claim.[2] Instead, there is also undisputed evidence that the claimed defective product had been substantially modified or repaired prior to the accident, the extent to which and the effects of which can no longer be ascertained. The trial court was well within its authority to quantify the defendant's prejudice and to fashion the sanction to exclude not only the testimony, but also the photographic evidence where there has been no showing that the photographs clearly and comprehensively depict the remains of the vehicle. *See Cornfeldt v. Tongen*, 262 N.W.2d 684, 697 (Minn. 1977). That the plaintiffs' expert found it necessary to remove and keep the several unidentified components which he has since lost attests to the inadequacy of the photographs as a foundation for expert testimony.

■■■ We then examine the propriety of summary judgment. In response to a motion for summary judgment, the nonmoving party must present the trial court with specific facts demonstrating the existence of a genuine issue of material fact. *Erickson v. General United Life Ins. Co.*, 256 N.W.2d 255, 259 (Minn.1977). Moreover, to establish a *prima facie* case of liability, the plaintiffs must demonstrate that (1) the motor home was in a defective condition unreasonably dangerous for its intended use, (2) the defect existed when the motor home left Newmar's control, and (3) the defect proximately caused Mary's injuries. *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623 n. 3 (Minn. 1984); *Hudson v. Snyder Body, Inc.*, 326

2. *See Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 80 (3rd Cir.1994).

N.W.2d 149, 155 (Minn.1982); *Lee v. Crookston Coca–Cola Bottling Co.*, 290 Minn. 321, 329, 188 N.W.2d 426, 432 (1971).

■ This record contains little to support a conclusion that the plaintiffs have sustained either burden. First, the expert's affidavit contains few facts beyond those which could be expected to be contained in the complaint. The pleadings are not included in the record, but an expert's affidavit which contains no specific factual support but only the bare conclusions that the motor home was defectively designed in its dual fuel system, exits and construction and that such defects proximately caused the fire and injuries sustained by Mary is legally insufficient to oppose summary judgment. *See Federal Ins. Co. v. Pratt's Express*, 308 Minn. 282, 241 N.W.2d 488 (1976).

The court of appeals has concluded that sufficient evidence exists to raise the requisite issue of material fact—identifying photographs taken by plaintiffs' expert, diagrams, blueprints of the fuel system and a recall letter of unclear significance issued by another manufacturer of motor homes which had used a substantially identical fuel system and which had concluded that a dual fuel system could not be eliminated as a fuel leak source. It is our conclusion that these items are insufficient to establish a *prima facie* case of liability. The apparently 90 photographs taken by plaintiffs' expert during his investigation are not in the record; cannot be determined to clearly, accurately or comprehensively depict either remains of the motor home or the nature of the repairs; and by virtue of an earlier analysis were properly excluded as derivative of the expert's investigation. Similarly, the blueprints are not of record and the "diagrams" to which the appellate court refers are but hand-rendered illustrations of the vehicle and the dual fuel system produced during a deposition of Douglas Tillman, former president of the now-defunct Promatic Corporation, which had supplied components and operating portions of the dual fuel system incorporated into the Patton motor home.

Under these circumstances, it is apparent that even if the plaintiffs could demonstrate that a design defect existed at the time the motor home left Newmar's control, their failure to preserve the evidence eliminates their ability to demonstrate that the defect was present at the time of or caused the fire.

Reversed and summary judgment for defendant reinstated.