**Daniel HOFFMAN, et al., Appellants,**

v.

**FORD MOTOR COMPANY, Respondent.**

No. C5–98–949.

Court of Appeals of Minnesota.

Dec. 22, 1998.

Joseph F. Lulic, Hanson, Lulic & Krall, Minneapolis, MN (for appellants).

Wayne D. Struble, Bowman and Brooke, LLP, Minneapolis, MN; and Robert Whitney, Foley & Lardner, Madison, WI (for respondent).

Considered and decided by SHUMAKER, P.J., and CRIPPEN and KLAPHAKE, JJ.

## O P I N I O N

SHUMAKER, Judge.

Appellants Daniel and Barbara Hoffman asserted claims of defective manufacture and breach of warranty against respondent Ford Motor Company as a result of a fire allegedly caused by their 1993 Ford Taurus. The trial court bifurcated the trial and first heard evidence as to notice, spoliation, and prejudice. After the first phase of the bifurcated trial, the court found that Daniel Hoffman's telephone call to the dealer from whom he purchased the car was not a sufficient notice of a claim or breach. The trial court also found that important evidence had been de-

stroyed, lost or altered, thereby causing prejudice to respondent. The court imposed the sanction of the exclusion of all testimony and evidence regarding the cause and origin of the fire derived from an investigation of the car and the fire scene. The court then dismissed the action because appellants could not prove any of their claims. In this appeal, appellants challenge the trial court's findings as to notice, spoliation, and prejudice and its imposition of the sanction of exclusion of evidence. We affirm.

## FACTS

When Daniel Hoffman returned home from work at 5:30 p.m. on January 19, 1993, he parked his new Ford Taurus automobile in the garage attached to his house. The garage also contained a Chevrolet Suburban vehicle, a tractor, gas-powered yard implements, firewood, fertilizer, motor oil, gasoline cans, trash and garbage containers, recycling bins, and storage cubes. About a half hour after his arrival, Hoffman became aware that the garage was on fire and he dialed 911.

As the responding fire crew fought the fire, deputy state fire marshal Thomas Neudahl investigated to determine the origin and the cause of the fire. He visually inspected the exterior and the interior of the garage and its various contents, and he took photographs, including one of the Taurus parked inside the garage. During its "overhaul" of the fire scene, the crew moved the Taurus outside the garage.

The next day, Hoffman reported the fire to his homeowners' insurer. He then called Brookdale Ford, the dealer from whom he bought the Taurus, to cancel a service appointment and to request copies of the sales invoice, loan papers, and the warranty. He told a Brookdale employee that "my new Ford Taurus started on fire in my garage and burned my whole house down."

A second fire erupted in the garage on January 21, 1993. Neudahl investigated again and observed that, although this fire extensively damaged the home, the garage area, burn patterns and debris from the first fire had not appreciably changed. It was on this day also that Brookdale Ford sent a fax message to Hoffman:

Dan—I have enclosed a copy of your loan and a copy of the original invoice. I also have enclosed a copy of an invoice for stock # 5470 which is the twin to your car, it is in my stock. I'll call you this afternoon to discuss your options. I can't tell you how sorry I feel about this unfortunate accident and stand ready to help in any way I can. Sincerely, Ed Schiff.

Hoffman's telephone call and the fax reply were the only communications between appellants and Brookdale Ford about the fire. Appellants never contacted respondent about the fire.

Appellants' insurer retained fire investigator George Wiestling to make an origin and cause determination of the fire. He inspected the scene on January 22, 1993, conducted tactile tests, and took photographs. The insurer retained a second investigator, Don Peterson, who inspected the scene and the Taurus on February 9, 1993. Sometime thereafter, the Taurus was taken to a salvage yard, and on May 24, 1993, the garage and home were demolished. As of this time no one had made any investigation of the scene or the Taurus on behalf of respondent.

Appellants commenced their lawsuit against respondent on February 7, 1994. Respondent retained fire investigator Walter Newell in July 1994, and he inspected the Taurus in the salvage yard during the fall of that year. Jack Ridnour, respondent's vehicle fire investigator, also inspected the Taurus at the salvage yard in November, 1994.

The parties appeared for a pretrial conference before the Honorable David M. Duffy in November, 1996. At that time respondent moved for spoliation sanctions against appellants for having destroyed the fire scene and its contents and for having altered the Taurus before respondent was given an opportunity to inspect. Judge Duffy ruled that the appropriate sanction would be an "inference instruction" to be given to the jury after the testimony of appellants' first fire expert and then again in the final charge:

If you determine that the plaintiffs or their agents failed to notify Ford before the scene of the fire was demolished, you may infer that the scene of the fire would

have revealed evidence unfavorable to the plaintiffs.

Before he could start the trial, Judge Duffy was transferred to another court division, and the case was reassigned to the Honorable Charles A. Porter, Jr. Appellants then moved for a reconsideration of Judge Duffy's spoliation ruling. Judge Porter focused on how to implement Judge Duffy's instruction, listened to arguments, and ruled that he would bifurcate the jury trial.

Judge Porter presented the parties with three options as to the bifurcated trial. Under the first option, the jury in the first phase would decide whether or not the spoliation of evidence was prejudicial enough to trigger an application of the spoliation inference. Once the jury resolved that issue, the trial would proceed to the second-phase issues, with or without the spoliation inference. The second option provided that the first-phase issue would be tried to the court and the second-phase issues to the jury. The third option allowed offers of proof through testimony on the first-phase issue. The parties agreed to the second option.

Judge Porter informed the parties that in the first phase he would determine whether or not the inference should actually be applied to the case. Appellants objected and argued that Judge Porter had authority only to determine whether or not the jury in the second phase would be given Judge Duffy's instruction. Judge Porter disagreed and presided as fact-finder in the first phase of the bifurcated trial.

The evidence consisted of testimony from Daniel Hoffman, Thomas Neudahl, George Wiestling, Walter Newell, and Jack Ridnour, numerous photographs, and some tangible exhibits. All of the experts agreed that the best evidence of the origin and the cause of a fire is the fire scene itself, including the exterior and interior of buildings, the contents of such areas, burn patterns, residuals of combustibles, and fire debris. No expert believed that an adequate investigation could be conducted based solely on photographs taken by others. The experts agreed that an investigator relies on multiple senses in fire inspections as he looks at, smells and touches various areas and items.

Each expert stated an opinion as to the origin of the fire. Neudahl and Wiestling placed the origin somewhere inside the Taurus. Newell and Ridnour testified that it started in an area of the garage in front of the Taurus.

There was much testimony about the photographs Neudahl and Wiestling had taken at the scene. Respondent's experts concluded that the photographs were not entirely clear or were not sufficiently comprehensive. For example, one expert testified that even though there were photographs of fire debris, they did not show the debris in layers, and ordinarily fire debris is inspected layer by layer. As to matters not fully or clearly depicted in their photographs, Neudahl and Wiestling testified that they would rely on their recollections of their firsthand observations of the scene.

There was conflicting testimony as to the location, nature and significance of burn patterns on the Chevrolet Suburban and the Taurus. Respondent's experts had to determine the burn patterns on the Suburban from photographs, which they deemed inadequate. They had to determine the burn patterns from the Taurus after alteration through corrosion.

As to the cause of the fire, the evidence showed that initially appellants' experts believed a cooling fan was responsible. Later they attributed the fire to a connector to the Taurus's ABS electronics module. Ridnour testified that appellants' photographs of the module and wiring were inadequate because they did not accurately show true colors, and that colors are important in detecting burn patterns. Furthermore, Ridnour testified that existing connectors were of good quality but one wire was broken and a connector was missing. He gave his opinion that the wire was broken and the connector lost either when the Taurus was moved or when someone else inspected it.

In addition to the various conflicts in the experts' testimony, Judge Porter heard testimony that a fire investigation is a process of elimination whereby possible specific ignition and heat sources are located, inspected and ruled in or out. He heard respondent's ex-

perts testify that they were totally deprived of the opportunity to investigate the many possible ignition sources in the garage.

At the conclusion of the first phase of the bifurcated trial, Judge Porter found that Hoffman's telephone call to Brookdale Ford was not sufficient notice to trigger a duty by Brookdale or respondent to investigate further. He also found that important evidence had been destroyed, lost or altered and that respondent was prejudiced by the spoliation. He then ruled that the appropriate sanction would be to exclude "all testimony and evidence regarding the cause of the fire that derived from an investigation of the car itself, the garage, or any contents of the garage." Without that evidence appellants were not able to prove any claim against respondent and Judge Porter dismissed the action.

## ISSUES

1. Did the trial court err in finding that appellants failed to give sufficient notice to respondent to prevent the imposition of sanctions for spoliation of evidence?

2. Did the trial court err in finding that appellants or their agents destroyed, lost or altered important relevant evidence?

3. Did the trial court err in finding that the spoliation of relevant important evidence prejudiced respondent's defense?

4. Did the trial court err in excluding appellants' expert evidence as a sanction for spoliation?

## ANALYSIS

In the first phase of a bifurcated trial, the trial court served as the trier of fact and made findings as to notice, spoliation, and prejudice.

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn. R. Civ. P. 52.01. *See also Bedow v. Watkins,* 539 N.W.2d 414, 416 (Minn.App. 1995) *rev'd on other grounds,* 552 N.W.2d 543 (Minn.1996); *Griffin v. Van Griffin,* 267 N.W.2d 733, 735 (Minn.1978).

1. Notice

■ The parties agree that there is no Minnesota case that specifically provides a rule for determining the sufficiency of notice to avoid a sanction for the spoliation of evidence. The parties analogize such notice, however, to that required for breach of sales warranty claims, and they cite *Church of Nativity v. WatPro, Inc.,* 491 N.W.2d 1, 5–6 (Minn.1992), as authority. That case dealt with a U.C.C. breach of warranty claim for the sale of defective roofing materials. Under the U.C.C., a claimant must "notify the seller of breach or be barred from any remedy." Minn.Stat. § 336.2–607(3)(a) (1996). The supreme court said that "[t]he sufficiency of notice of a breach of warranty is a jury question * * *" that requires an evaluation of the factual setting and circumstances of the parties. *WatPro,* 491 N.W.2d at 5. Such notice may take any form, may be oral, and is intended to serve three purposes:

> First, notice provides the seller a chance to correct any defect. Second, notice affords the seller an opportunity to prepare for negotiation and litigation. Third, notice provides the seller a safeguard against stale claims being asserted after it is too late for the manufacturer or seller to investigate them.

*Id.* (quoting *Prutch v. Ford Motor Co.,* 618 P.2d 657, 661 (Colo.1980)).

■ The purposes of a "spoliation notice" are virtually identical. Thus, we rely on *WatPro* in reviewing the notice issue in this case and hold that, to be sufficient in content, a spoliation notice must reasonably notify the recipient of a breach or a claim.

The "notice" in this case consisted of a single telephone call by Daniel Hoffman to an employee of the dealership from which he bought his car. He made the call for two reasons, namely, to cancel a service appointment and to request copies of paperwork relating to the car. At no time did he allege a breach of warranty or indicate that he was making, or might make, a claim. He was vague as to cause, fault or responsibility, saying only that "my new Ford Taurus start-

ed on fire." He did not request an inspection, a meeting, or any action beyond the delivery of documents. He neither called nor had any other communication with Brookdale Ford about the fire after that. Nor did his homeowners' insurer ever contact Brookdale Ford about the fire loss. On these facts, we cannot conclude that the trial court's finding that notice was insufficient in content was clearly erroneous.[1] *See American Family Ins. Co. v. Village Pontiac-GMC, Inc.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115, 1119 (1992) (a simple telephone call to an automobile dealer from a distraught buyer claiming that her car caused a fire that damaged her home was insufficient notice to prevent spoliation sanctions); *Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 628 A.2d 1108, 1124 (1993) (notice to manufacturer that car caught fire from an undetermined cause and that owner made insurance claim was insufficient notice to manufacturer of claim).

### 2. Spoliation

■ "Spoliation of evidence refers to the destruction of relevant evidence by a party * * *." *Donohoe v. American Isuzu Motors, Inc.*, 155 F.R.D. 515, 519 (1994).

■ As the experts indicated, a fire scene itself is the best evidence of the origin and the cause of a fire. This scene consisted of a house, a garage, motor vehicles, gasoline-powered implements, combustible materials, and fire debris. The scene was of unquestionable relevancy.

By the time of notice to respondent through the lawsuit, the house and garage had been demolished, the Taurus moved to another location, and the other items destroyed or made unavailable for inspection. Even though the Taurus remained in existence, the evidence showed that a burn pattern on the hood had been partially obliterated by corrosion and parts of the ABS system, alleged to have caused the fire, had been damaged or lost.

The trial court's finding that relevant evidence of the origin and the cause of the fire had been destroyed, altered or lost was not clearly erroneous.

### 3. Prejudice

■ The evidence supports a finding that respondent had been deprived of an opportunity to conduct a firsthand investigation of a myriad of possible alternative ignition sources at the scene of the fire and was forced instead to rely on unclear and incomplete photographs and the testimony of other fire investigators to rebut appellants' claims. The evidence also supports a finding that respondent had been deprived of an opportunity to examine the Taurus at the scene with fresh burn patterns and with the ABS system intact. The trial court's finding that these deficiencies significantly prejudiced respondent is not clearly erroneous.

Appellants argue that respondent's experts have been able to formulate opinions as to the origin and cause of the fire despite the evidentiary deficiencies, and, therefore, the prejudice is not significant. The trial court assessed the vulnerability of respondent's experts' testimony when presented to a jury and found that respondent would be confronted with the challenge of meeting probative and convincing firsthand evidence with sketchy, relatively speculative secondhand evidence. We agree that the trial court's assessment is supported by the evidence.

### 4. Propriety of Sanction

■ "Courts have long afforded redress for the destruction of evidence * * *." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 436 (Minn.1990). The propriety of a sanction for the spoliation of evidence is determined by the prejudice resulting to the opposing party. *Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn.1995). *Patton* stated the standard for reviewing spoliation sanctions:

> One challenging the trial court's choice of a sanction has the difficult burden of convincing an appellate court that the trial

---

1. The trial court limited its finding to a determination of the sufficiency of the content of the notice and declined to rule on the issue of whether notice to a seller can bind a remote manufacturer.

court abused its discretion—"a burden which is met only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate."

*Id.* (quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir.1992)).

This case turns on the determination of the origin and the cause of the fire that destroyed appellants' property. There were two general sources of evidence available for making the determination, the fire scene and the Taurus. Appellants' first expert was able to investigate the scene and the Taurus at the scene within three days of the initial fire. Appellants' second expert was able to inspect the Taurus at the scene within two weeks after the initial fire. Appellants' experts gathered firsthand evidence, supplemented with photographs.

Respondent was able to gather very little firsthand evidence of the Taurus and none whatsoever of the fire scene. In upholding the exclusion of expert testimony and photographs, *Patton* said:

The trial court was well within its authority to quantify the defendant's prejudice and to fashion the sanction to exclude not only the testimony, but also the photographic evidence when there has been no showing that the photographs clearly and comprehensively depict the remains of the vehicle.

*Patton*, 538 N.W.2d at 119.

## DECISION

The trial court intended its sanction to offset the prejudice resulting to respondent from appellants' spoliation of vital evidence. On the record before us, we cannot say "that no reasonable person would agree" with the appropriateness of the trial court's sanction. *Id.* There was, therefore, no abuse of discretion.

**Affirmed.**