**David J.T. MILLER, Appellant,**

**v.**

**Linda J. LANKOW, et al., Respondents,**

**DCI, Inc., Defendant,**

**Donnelly Brothers, Respondent,**

**Total Service Company, Respondent,**

**and**

**Linda J. Lankow, et al., third–party plaintiffs, Respondents,**

**v.**

**Burnet Realty, Inc. d/b/a Coldwell Banker Burnet, et al., third–party defendants, Respondents.**

**No. A09–244.**

Court of Appeals of Minnesota.

Dec. 22, 2009.

Patrick W. Mechenfelder, Frederick M. Young, Gries & Lenhardt, P.L.L.P., St. Michael, MN, for appellant.

Robert P. Christensen, Robert P. Christensen, P.A., St. Louis Park, MN; and

Scott Wilson, Shorewood, MN, for respondents Lankow and Betz.

Timothy W. Waldeck, Waldeck & Lind, P.A., Minneapolis, MN, for respondent Donnelly Brothers.

Jonathon M. Zentner, Kafi C. Linville, Paul Darsow, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for respondent Total Service Company.

Timothy J. O'Connor, Eric Steinhoff, Bill Davidson, Lind, Jensen, Sullivan & Peterson, Minneapolis, MN, for respondents Burnet Realty and Mark Geier.

Considered and decided by STAUBER, Presiding Judge; KLAPHAKE, Judge; and WORKE, Judge.

## OPINION

STAUBER, Judge.

This is an appeal from summary judgment dismissing appellant's claims against respondents arising out of appellant's discovery of mold and moisture intrusion in his home. Appellant contends that the district court committed clear error in excluding evidence of the mold and moisture intrusion as a spoliation sanction for his repair of the home without sufficient notice to respondents because (1) respondents had notice of the mold and moisture intrusion and, thus, were not prejudiced by the repairs; (2) the district court did not make a factual finding that respondents were prejudiced by the repairs; and (3) the sanction was excessive. Appellant also claims that the district court erred in granting summary judgment to previous homeowners under Minn.Stat. § 513.57, subd. 2 (2008). We affirm.

## FACTS

In 2003, respondent Linda Lankow placed her home in St. Michael on the market for sale. Shortly thereafter, a mold test requested by a prospective buyer revealed fungal growth in the stucco home. Lankow hired respondent Total Services Company (TSC) to remove the stucco, investigate the extent of the moisture intrusion, and perform structural repairs. Lankow then hired respondent Donnelly Brothers (Donnelly) to re-stucco the portions of the exterior that had been removed during remediation.[1] After the necessary abatement and repairs were made, Lankow renewed her efforts to sell the home. Lankow provided photographs and records of the repairs to prospective buyers and also offered a disclosure statement indicating that the home had been affected by moisture intrusion and mold growth. The disclosure stated that "[t]he affected areas were remediated by licensed professional contractors and engineers."

On May 21, 2004, appellant David Miller purchased the home from Lankow. When signing the purchase documents, appellant also signed a receipt for the disclosure forms, acknowledging his awareness of the previous moisture and mold problems and the repairs performed by the contractors. Appellant also expressly waived an inspection of the home.

On September 20, 2005, appellant discovered moisture intrusion and mold in some of the same areas of the home that had been remediated in 2003. Appellant immediately contacted TSC and Donnelly (hereinafter "the contractors") to inform them of his discovery. On September 30, 2005, the contractors visited the home to discuss the moisture intrusion and mold and to explain the scope of their involve-

---

1. Defendant Diversified Contractors, Inc., (DCI) was also hired to remediate the mold and moisture problem. DCI was named as a defendant in this suit, but has subsequently settled with appellant pursuant to a *Pierringer* release.

ment in the previous remediation. The contractors offered opinions about the possible cause of the moisture and mold, but did not offer to remedy it. According to appellant, it was difficult to determine the cause and extent of the moisture and mold because the damage was concealed by the stucco exterior. After the meeting ended, appellant was left with the impression that "the ball was in [his] court. [The contractors] weren't going to do anything about [the moisture intrusion and mold]."

On December 27, 2005, appellant's first attorney sent letters to the contractors alleging that the remediation work they performed in 2003 was defective, resulting in continued moisture intrusion and mold. The letters also provided notice of a possible claim for breach of the home-improvement warranty provided under Minn.Stat. §§ 327A.01 to .08 (2008). The attorney encouraged the contractors to contact him to "inspect the property and discuss possible resolutions" by January 9, 2006, or appellant would "put the matter into suit." That same day, the attorney sent a notice letter to Lankow and her husband James Betz [2] alleging that they had falsely represented to appellant that the moisture and mold problems had been remediated and demanding that they contact him by January 9, 2006, to avoid legal action. There is no evidence in the record that any of the parties responded to the letter before the deadline.

A representative from Donnelly visited the home again on March 10, 2006, after appellant removed a portion of an interior wall in order to investigate the extent of the moisture damage. Evidence of moisture intrusion was present inside the wall, but the representative claimed that he could not identify the cause of the moisture. No agreement was reached to remedy the problem. After the visit from the Donnelly representative, there is no evidence in the record of any written or oral contact between appellant and respondents until March 2007. In the meantime, appellant obtained new counsel.

In a letter to Lankow, Betz, and the contractors dated March 15, 2007,[3] appellant's new attorney instructed them to immediately schedule any further inspections of appellant's home because appellant planned to proceed with necessary repairs beginning on March 22, 2007. However, it was later discovered that appellant hired a contractor to remediate and repair the home in January 2007. The contractor commenced remediation and repairs that same month, and by March 23, 2007, when a representative from Donnelly visited the home, the entire exterior of the home, including the stucco and the underlying plywood, had already been removed, and only insulation remained in the wall cavities. Prior to the March 15, 2007 letter, appellant had never provided any of the parties with notice of his intent to proceed with repairs to the home.

On April 27, 2007, appellant brought suit against Lankow, Betz, and several contractors, including TSC and Donnelly, alleging that Lankow and Betz had misled appellant as to the continuing existence of a moisture-intrusion problem in the home and that the contractors had failed to repair it. The defendants cross-claimed against each other for contribution and indemnity, and Lankow and Betz brought a third-party claim against Burnet Realty, Inc. (Burnet) and Mark Geier. Burnet was Lankow's broker for the sale of the

---

**2.** Betz had only recently married Lankow and did not possess an ownership interest in the home at the time of the sale to appellant.

**3.** Although the letter was dated March 15, 2007, Donnelly claims that it did not receive it until March 22, 2007.

home, and Geier was Burnet's agent. Each defendant and third-party defendant moved for summary judgment, claiming that no genuine issues of material fact existed because appellant had spoliated the evidence of water damage and mold by making repairs to the home without providing them with a meaningful opportunity to inspect the premises.

The district court found that spoliation had occurred and sanctioned appellant by excluding all physical evidence of the alleged damage to the home and any expert reports relating to the moisture intrusion and mold infestation. The court further concluded that, without the excluded evidence, appellant was unable to present a genuine issue of material fact to support his claims. Accordingly, summary judgment was granted to Lankow, the contractors, Burnet, and Geier on all claims and cross-claims. All claims against Betz were dismissed because he had no ownership interest in the home and did not sign any disclosure statements in conjunction with the sale of the home to appellant. This appeal followed.

## ISSUES

I. Did the district court commit clear error in imposing spoliation sanctions against appellant?

II. Did the district court err in granting summary judgment to Lankow and Betz?

III. Should a portion of Lankow and Betz's brief be stricken from the record?

## ANALYSIS

### I.

■■■ Appellant challenges the imposition of spoliation sanctions. Spoliation of evidence is the destruction of relevant evidence by a party. *Hoffman v. Ford Motor Co.*, 587 N.W.2d 66, 70 (Minn.App.1998). A district court may sanction a party who destroys evidence if that party gains an evidentiary advantage due to its failure to preserve evidence after having had the opportunity to examine it. *Himes v. Woodings–Verona Tool Works, Inc.*, 565 N.W.2d 469, 470–71 (Minn.App.1997), *review denied* (Minn. Aug. 26, 1997). The severity of the sanction depends on the prejudice suffered by the opposing party. *Hoffman*, 587 N.W.2d at 71. A party can avoid sanctions for spoliation of evidence if the opposing party had sufficient notice of a "breach or claim," giving the party the opportunity to correct defects, prepare for negotiation or litigation, and "safeguard against stale claims being asserted after it is too late ... to investigate them." *Hoffman*, 587 N.W.2d at 70 (quotation omitted). The sufficiency of the notice is a factual determination that will not be set aside unless clearly erroneous. *Id.* at 70–71.

### A. Sufficiency of notice

Appellant does not dispute that relevant evidence was destroyed, but contends that the district court's finding that he failed to provide sufficient notice to avoid spoliation sanctions is clearly erroneous because he provided notice of his claims against respondents before making repairs to the home.

Appellant argues that he provided sufficient notice to the contractors on several occasions, including: (1) the phone call on September 20, 2005; (2) the home visit on September 30, 2005; (3) the December 27, 2005 letter; (4) the home visit on March 10, 2006; and (5) the March 15, 2007, letter. Appellant also alleges that the two letters provided sufficient notice to the other respondents. Each notification is addressed in turn.

#### 1. Oral notice on September 20, 2005

■■■ Appellant argues that he provided sufficient notice to the contractors by im-

mediately informing them by phone of the mold and moisture problems and by meeting with them at his home on September 30, 2005. We disagree. Appellant testified at his deposition that he called the contractors on September 20, 2005, to inform them "that the house still had moisture problems and . . . to see if there was anything they could do about it." This statement suggests that appellant was interested in obtaining the contractors' assistance in remediating the problem, rather than providing them with notice of a breach or claim. Moreover, there is no evidence in the record that appellant attributed the problems to defective workmanship by the contractors. Therefore, the district court did not clearly err in determining that the oral notice to the contractors was insufficient to avoid spoliation sanctions.

### 2. September 30, 2005 meeting

■ Appellant further contends that he provided the contractors with sufficient notice at the September 30, 2005 meeting by discussing the mold and moisture problems and allegedly informing them that "it would be necessary to have the problem fixed immediately." But, like the oral notice on September 20, 2005, the discussion during the meeting did not constitute sufficient notice because appellant again failed to inform the contractors that he believed they were responsible for the damage. Appellant's deposition testimony indicates that, during the meeting, representatives of the contractors explained the scope of their involvement in the previous remediation and offered opinions about potential causes of the moisture and mold. Merely discussing the work performed and theo-

rizing about potential causes of the damage does not constitute sufficient notice of a breach or claim. *See Hoffman*, 587 N.W.2d at 70–71 (concluding that mere mention to an employee at the dealership where a vehicle was purchased that vehicle had caught on fire was insufficient notice of a claim of automotive defect against the manufacturer to avoid spoliation sanctions). Appellant's own account of the meeting suggests that he was only in the initial stages of determining the cause of the moisture and mold and was hopeful that the contractors could help him remediate the problem. There is no evidence that appellant informed the contractors that he believed that they were responsible. Without such notice, the contractors had no reason to perform a full, and likely intrusive, investigation of the damage to prepare for litigation or protect against stale claims. Accordingly, the district court did not clearly err in concluding that appellant's discussions with the contractors during this time period failed to constitute sufficient notice of a claim.[4]

### 3. Written notice on December 27, 2005

Next, appellant argues that the letters sent by his attorney to respondents comported with the notice requirements of *Hoffman* because they informed respondents of a potential breach or claim and were sent more than a year before the spoliation occurred. Conversely, respondents claim that the letters failed to provide sufficient notice to avoid spoliation sanctions because they contained only vague assertions of "potential construction defects" and never warned that failure to

4. The dissent notes that there is some evidence that respondents met with appellant at some point after the September 30, 2005 meeting to discuss appellant's impending lawsuit. The date of the alleged meeting is un- clear from the record. But, assuming the meeting occurred, there is no evidence that respondents were provided with notice of appellant's remediation plans at the meeting.

respond to the notice would constitute a waiver of the opportunity to inspect the evidence prior to trial. Appellant concedes that the letters failed to mention his plans to remediate the alleged construction defects, but claims that such notice was unnecessary because any notice of a breach or claim is sufficient under *Hoffman.*

We agree that the letters offered some notice of a potential claim. But in order to provide a meaningful opportunity to correct defects, prepare for negotiation or litigation, and safeguard against stale claims, as required by *Hoffman,* we conclude that a party must provide actual notice of the nature and timing of any action that could lead to destruction of evidence and afford a reasonable amount of time from the date of the notice to inspect and preserve evidence. Such notice was especially critical in this case because the cause of the damage was in dispute, multiple parties were alleged to be responsible, and much of the mold and moisture was concealed within the exterior walls and, therefore, could not be examined without significant damage to the structure.

Here, appellant's letters failed to mention any remediation plans and gave no indication that respondents' failure to respond to the notice would constitute a waiver of any future opportunity to inspect the evidence. Instead, the letters stated that any unresolved claims against respondents would be pursued through litigation at a later date. Because the letters failed to mention any imminent remediation plans, the district court did not clearly err in concluding that the letters provided insufficient notice to avoid spoliation sanctions.

Appellant also claims that the notice letter to the contractors was sufficient because it references Minn.Stat. §§ 327A.01 to .08 (2008). Chapter 327A provides home-improvement warranties to homeowners for faulty workmanship by a contractor. *See* Minn.Stat. § 327A.02, subd. 3. In order to bring a claim against a contractor under this chapter, the aggrieved party must first allow the contractor 30 days to inspect the property and make any offer to repair the problem. *Id.,* subd. 4.

By referencing chapter 327A, appellant's letter was arguably sufficient to preserve a claim for breach of warranty. But such notice was insufficient to avoid spoliation sanctions because it did not inform respondents of appellant's plan to remediate the moisture and mold problems. Thus, the district court did not clearly err in concluding that the notice was insufficient because, without such specific notice, respondents were unable to properly inspect the damage in preparation for litigation.

#### 4. March 10, 2006 meeting

Appellant also argues that Donnelly received notice during the March 10, 2006 meeting. But, again, there is no evidence that Donnelly was informed of appellant's remediation plans during the meeting. As discussed above, notice of remediation efforts is essential to avoid spoliation sanctions because it preserves a party's right to correct defects, prepare for negotiation and litigation, and protect against stale claims. Accordingly, we conclude that the district court did not clearly err in determining that the discussions during the meeting provided sufficient notice under *Hoffman.*

#### 5. March 15, 2007 letter

Finally, appellant seems to argue that his March 15, 2007 letter provided sufficient notice of a claim. But although the letter contained specific notice of impending remediation work and included a timeline for completing inspections, it is

undisputed that the stucco exterior and underlying plywood already had been removed before the letter was even mailed to respondents. Without sufficient prior notice of the remediation, respondents had no meaningful opportunity to inspect the home before relevant evidence had been destroyed. The district court also implied that appellant acted in bad faith by falsely representing that the remediation process had not commenced. Because the letter was not sent until after remediation efforts had commenced, we conclude the district court did not clearly err in concluding that appellant failed to provide sufficient notice to avoid spoliation sanctions.

## B. Prejudice

 Next, appellant argues that the imposition of a spoliation sanction was inappropriate because there was no factual finding by the district court that the spoliation had prejudiced respondents. *See Foss v. Kincade*, 766 N.W.2d 317, 323 (Minn.2009) ("A [spoliation] sanction is only appropriate if the unavailability of the evidence results in prejudice to the opposing party."). Appellant admits that the district court's conclusions of law contain a finding that "the prejudice to [respondents] is extremely significant," but claims that, because the finding is contained in the conclusions-of-law section, it is a not factual finding. We disagree. How the district court characterizes a particular statement in an order or judgment is not dispositive. *Dailey v. Chermak*, 709 N.W.2d 626, 631 (Minn.App.2006) ("[M]islabeling of a finding of fact as a conclusion of law, or vice versa, is not determinative of the true nature of the item."), *review denied* (Minn. May 16, 2006). It is clear from our review of the record that this finding constituted a factual finding supporting the district court's imposition of a spoliation sanction. Moreover, evidence in

the record supports this finding. Jeff Agness, a representative from TSC, testified at his deposition that the removal of the stucco "precluded [him] from being able to determine what was the cause of the [mold and moisture] problems." Similarly, Mark Donnelly, the co-owner of Donnelly, stated in an affidavit that the removal of the exterior of the home prevented him from properly "analyz[ing] the relationship between [Donnelly's] stucco work and the moisture problem," because he could no longer examine the thickness, condition, and installation of the paper and sheathing on the exterior of the home. Thus, the district court's finding is not clearly erroneous.

## C. Least restrictive sanction

 Appellant also contends that the district court failed to impose the least restrictive sanction available.

> One challenging the [district] court's choice of a sanction has the difficult burden of convincing an appellate court that the [district] court abused its discretion—a burden which is met only when it is clear that no reasonable person would agree [with] the [district] court's assessment of what sanctions are appropriate.

*Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn.1995) (quotation omitted). But although a district court has broad discretion in its choice of sanctions, its power to sanction must be tempered by "the duty to impose the least restrictive sanction available under the circumstances." *Id.* at 118 (quotation omitted).

 Appellant asserts that, rather than excluding all physical evidence in the home and any expert reports relating to the moisture intrusion and mold infestation, the district court should have sanctioned him by instructing the jury that it

could draw an adverse inference with respect to the spoliated evidence. But by remediating the mold and moisture problems, appellant destroyed the physical evidence of the nature, cause, and extent of these problems. The only remaining evidence was appellant's expert report and several photographs of the damage taken by appellant.

Minnesota appellate courts have repeatedly stated that a non-spoliating party should not be forced to rely upon the spoliating party's evidence or witnesses, but instead should be allowed to conduct an independent investigation of the cause of the damage. *See id.* at 119 (concluding that exclusion of a party's expert testimony and evidence was an appropriate spoliation sanction because the non-spoliating party had been deprived of an opportunity to independently examine the spoliated evidence and would otherwise be forced to rely upon photographs, drawings and testimony of the spoliating party's own investigative expert); *Himes,* 565 N.W.2d at 471 (stating that when spoliation of evidence prevents a party from conducting an independent investigation, the prejudice caused by the spoliation is "extreme" and warrants exclusion of the spoliating party's evidence as a sanction). Moreover, the photographic evidence of mold and moisture damage offered by appellant is of poor quality.[5] The sanction imposed by the district court is harsh, but because the spoliation has prevented respondents from fully and independently investigating appellant's claims, the district court did not abuse its discretion in deciding to exclude appellant's physical evidence and expert report as a sanction.

## II.

Appellant contends that the district court erred in granting summary judgment to Lankow and Betz on his claims of fraud, misrepresentation, estoppel, unjust enrichment, breach of warranty, violation of the consumer fraud act, and breach of the real estate disclosure laws. Each of the claims was premised on appellant's belief that Lankow and Betz had concealed the mold and moisture problems prior to sale.

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

Appellant claims that the district court erroneously relied upon Minn.Stat. § 513.57, subd. 2 (2008), in granting summary judgment to Lankow and Betz. The statute requires a residential real estate purchaser to bring a claim for failure to disclose material facts that adversely and significantly affected the purchaser's use and enjoyment of the property within two years of the closing of the sale. *See* Minn. Stat. §§ 513.55, subd. 1(a)(1), .57, subd. 2

---

**5.** The photographs offered by appellant are black and white copies that do not clearly or comprehensively depict the mold and mois-

ture damage to the home or the work performed by the contractors.

(2008). Appellant contends that application of the statute of limitations does not bar his claims against Lankow and Betz because only one of his claims was premised on a lack of disclosure, and that claim is not barred by the two-year statute of limitations.

The district court did reference section 513.55 in granting summary judgment and seemed to imply that appellant's disclosure-violation claim was barred by the two-year statute of limitations. But the statute was not the district court's primary basis for granting summary judgment to Lankow and Betz. The district court granted summary judgment to Betz because he did not have an ownership interest in the home at the time of sale and did not sign any of the disclosure statements. And the district court indicated that summary judgment in favor of Lankow was appropriate because there was insufficient evidence to create a genuine issue of material fact after appellant's evidence of mold and moisture damage in the home had been excluded as a sanction for spoliation. We agree with the district court's conclusion because, without any evidence of mold or moisture problems, there is no genuine issue of material fact as to whether Lankow concealed mold or moisture intrusion from him or failed to provide the appropriate disclosures under section 513.55. Furthermore, the record clearly reflects that Lankow provided appellant with notice of the moisture and mold problems and the extent of her remediation efforts, but appellant chose not to obtain an independent inspection before closing on his purchase of the home. Therefore, the district court did not err in granting summary judgment to Lankow and Betz.

## III.

█ Finally, Burnet and Geier move to strike a footnote from Lankow and Betz's brief. Because we affirm the district court's decision, we deny this motion as moot. *See State v. Johnson,* 659 N.W.2d 819, 822 (Minn.App.2003) (stating that when the holding of the case has rendered the motion to strike moot, the motion is denied), *review denied* (Minn. July 15, 2003).

## DECISION

Because appellant did not provide respondents with sufficient advance notice or an opportunity to inspect and preserve the evidence of mold and moisture damage before commencing remediation efforts, the district court did not commit clear error in concluding that the notice was insufficient to avoid spoliation sanctions.

**Affirmed; motion denied.**

KLAPHAKE, Judge (dissenting).

Minnesota requires that "spoliation notice must reasonably notify the recipient of a breach or a claim." *Hoffman,* 587 N.W.2d at 70. In the context of construction litigation, such notice affords the potential adverse party the opportunity to correct any defect, prepare for negotiation and litigation, and safeguard against stale claims. *Id.* Here, appellant provided respondents with the notice required by *Hoffman,* but the majority insists that in addition to providing notice of a potential claim, appellant was also required to "inform respondents of appellant's plan to remediate the moisture and mold problems." This additional requirement adds an additional component to the claim notice required by *Hoffman* and is wholly unsupported in the law. In addition, respondents have not shown that they were prejudiced by appellant's remediation actions. Therefore, the district court's exclusion of appellant's evidence as a spoliation sanction was an abuse of discretion, and I would reverse.

The chronology of events shows that respondents were properly notified of appellant's potential claim between September 2005, when appellant discovered the ongoing water and mold problem, and early 2007, when appellant began removing the water- and mold-damaged walls of his home. In October 2005, a potential buyer of appellant's home opted out of the purchase after receiving a moisture analysis report obtained at the buyer's request. When appellant received the report and apparently sought another moisture analysis that also revealed the presence of mold and water infiltration in his home, appellant and a friend who owned a residential construction business cut a hole in the drywall under a window on the inside wall of appellant's home. They discovered in the area, which had been previously repaired, "moisture actually coming down the inside part of the wall" and "frost on the chipboard."

According to appellant, he then telephoned the contractors who had done the previous repair work, respondents Donnelly Brothers and Total Service Company, informed them of the problem, and told them that it would have to be fixed immediately. Mark Donnelly and Jeff Agness of Total Service Company visited appellant's home for a 45–minute meeting, where, according to appellant, they were shown the hole that had been cut in the wall, and "they both agreed that there was moisture in the wall again." During that meeting, the contractors stated that they had repaired only limited areas of the home as per the direction of the prior homeowners, and when asked "what they could do for" appellant, Mark Donnelly offered him a "fairly good price" to repair the problem, and Jeff Agness said nothing. Agness stated in his deposition that he, Mark Donnelly, and the prior homeowners met soon after the meeting with appellant, and "[t]he purpose of the meeting was to

make us aware that there may be a lawsuit on this, and for the people that were involved in that to … take a look at what does that mean, why are we being sued, what are the issues here."

On December 27, 2005, appellant's counsel sent each of the contractors a letter to provide them with "written notification of potential construction defects" in the home. The letter included a copy of the moisture analysis report, which revealed the continuing mold and water infiltration problem, and discussed the discovery of "work which was done inappropriately by your companies causing the problems to continue." The letter concluded by stating:

It is my hope that between your companies, the previous owner, and my client, we will be able to resolve this issue amicably and without much legal cost. As such, please contact me at your convenience if you wish to inspect the property and discuss possible resolutions. However, if I do not hear from you by January 9, 2006, I will presume that you do not wish to work on a resolution and I will put the matter into suit. Thank you and look forward to speaking with you.

Appellant also sent a very similar notice letter to the former homeowners.

Thereafter, only Mark Donnelly visited the home, and, according to his affidavit, his total investigation consisted of viewing "a cut [made] on the inside wall prior to my visit." Despite appellant's allegation that moisture was "actually coming down the inside part of the wall" that Donnelly had repaired earlier, Donnelly did nothing after twice visiting the house to investigate the problem, did not inquire further about the extent of the damage or condition of the house, did not have an expert evaluate the problem, and did nothing to otherwise

protect himself in the event of an adverse claim. Donnelly admits in his affidavit that appellant showed him the cut in the interior wall during his visit, but his affidavit omits to mention what Donnelly saw from viewing the cut or any conclusions he reached from this "investigation."

In *Hoffman*, we said that notice was inadequate for purposes of spoliation analysis when a new car owner whose vehicle had burned in his garage did not give the car dealership proper notice of a possible breach or claim and merely contacted the dealership by telephone to tell them that his vehicle had started on fire, to cancel a service appointment, and to request paperwork on the car. *Id.* at 70–71. Here, by contrast, appellant made several contacts with respondents over the course of a year and several months, and during this period he pinpointed respondents' actions as the source of the problem, encouraged them to inspect the problem, and eventually threatened suit when they took no action. Jeff Agness's admission that he and respondents met soon after the first meeting with appellant to discuss their legal exposure clearly shows that they were notified of a potential claim by appellant.

The fact that appellant may not have specifically informed respondents until March 2007 that he intended to remove the exterior stucco, when he had actually conducted stucco removal work during the early part of 2007, is irrelevant—by 2007 respondents had repeatedly received notice but had taken no action to correct the construction repair defects, prepare for negotiation or litigation, or safeguard against stale claims. *See id.* at 70.

It is also noteworthy that appellant had only a two-year window from the time he received notice of the problem in which to assert a claim, because the statute of limitations for such claims is two years from the date of discovery of the "injury."

Minn.Stat. § 541.051, subd. 1 (2008) (setting forth two-year statute of limitations for tort claims arising out of construction defects); *see also* Minn.Stat. § 327A.03 (2008) (stating that statutory warranties for home improvements apply only when the party providing a home improvement is given notice of a defect within six months of discovery of a work defect). Respondents may have had little motivation to respond during the period that appellant attempted to notify them of the continuation of the mold and water problem, but their dilatory tactics should not give them a legitimate spoliation claim.

Further, sanctioning a party for destruction of evidence "is only appropriate if the unavailability of the evidence results in prejudice to the opposing party." *Foss v. Kincade*, 766 N.W.2d 317, 323 (Minn.2009); *see Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn.1995) (stating that spoliation sanction should be tailored to address "the impact of spoliation—the prejudice to the opposing party"). In crafting a spoliation sanction, the court must "examine the nature of the item lost in the context of the claims asserted and the potential for remediation of the prejudice." *Foss*, 766 N.W.2d at 323 (quoting *Patton*, 538 N.W.2d at 119). In *Foss*, the supreme court ruled that homeowners' disposal of a bookcase that had fallen on a visiting child did not merit a discovery sanction in a negligence action brought against the homeowners, because the bookcase had no evidentiary value and its disposal did not prejudice the plaintiffs. *Foss*, 766 N.W.2d at 324. Here, neither Donnelly nor the other respondents have shown that they were unable to determine the nature of appellant's claims or their response to them because of any lack of evidence in the record. As in *Foss*, they have not shown that they suffered prejudice as the

result of appellant's 2007 repair work to his home.

In addition, the record includes 21 photographs taken of the exterior of appellant's home in 2007 after the stucco was removed that, while black and white, clearly show the condition of the walls, including the presence of mold, and the record also includes the observations of various witnesses who observed the condition of the home. Under these circumstances, the sanction of exclusion of appellant's evidence resulting in dismissal of his claim against all parties was simply wrong. Of particular concern is the court's dismissal of appellant's misrepresentation and warranty claims against the previous homeowners, which were independent of any dispute regarding workmanship of the contractors.

The threat of a spoliation sanction encourages an injured party to inform an alleged tortfeasor of a possible claim in order to enable the tortfeasor to defend against such a claim. Respondents were given that opportunity here, and the district court abused its discretion by imposing a spoliation sanction that extinguished appellant's claim.